AUGUST J. NICKLAS, administrator of Ellen Cunningham, deceased,

*v.*

BRIDGET PARKER et al.

[Submitted July 10th, 1906.   Decided January 2d, 1907.]

1. Where intestate deposited money in a savings bank in her own name as trustee for certain persons who were dead at the time the accounts were opened, the deposits passed to her administrator after her death.

2. A mere savings bank deposit made by intestate in her own name as trustee for another, who was a mere friend, over which deposit intestate exercised complete control during her life, was insufficient to establish a gift of the deposit *inter vivos*, or to create a trust entitling the alleged beneficiary to the deposit as against intestate's administrator.

On appeal of defendant Honora Finerty from a decree in the court of chancery, advised by Vice-Chancellor Garrison, who filed the following opinion:

Ellen Cunningham, who married a man named Kelly, and thereafter seems to have used indifferently either her maiden or her married name, died on the 13th of January, 1904. Her administrator, the complainant in this suit, found among her effects three passbooks evidencing deposits in the Provident Institution for Savings in Jersey City. One of these passbooks was numbered 115,348, and was in the name of "Ellen Kelly, Trustee for Eliza Clark." Another passbook was numbered 116,443, in the name of "Ellen Cunningham, Trustee for Mary Clark." The third passbook was numbered 93,249, in the name of "Ellen Cunningham, Trustee for Honora Finerty." The administrator filed this bill for the purpose of having the controversy over the ownership of the choses in action evidenced by the books determined. The Provident Institution for Savings filed an answer and cross-bill, and in the latter tendered the

money into court for distribution under the order of the court. Issue was joined thereon, and the case is now before the court practically as one of interpleader between the various claimants. The next of kin of Ellen Cunningham (or Kelly) are Bridget Parker, her sister; John Edward Clark, her nephew; Michael, William, Margaret and Mary Ann Keough, claiming to be her nephews and nieces, and Mrs. Catharine Donnelly, James, Isabella, John, Thomas and Vincent Donnelly, and Mary Donnelly Ritgert, claiming to be her grandnieces and grandnephews.

Since it appeared at the trial that Eliza Clark, who was named as *cestui que trust* of the account No. 115,348, was a relative of Ellen Kelly, and had died some six and one-half years prior to the opening of the account, no contest was made with respect to her rights therein, and a decree will therefore be made that this account is collectible by the administrator of Ellen Kelly, otherwise Cunningham.

A similar finding, for similar reasons, is made with respect to the account No. 116,443. The Mary Clark named as *cestui que trust* in this account was also a relative of Ellen Cunningham, and had died many years prior to the opening of this account.

This leaves as the sole chose in action in controversy in this suit that evidenced by passbook No. 93,249, in the name of "Ellen Cunningham, Trustee for Honora Finerty." This account was opened on the 29th of June, 1898, by the deposit of $292. Small deposits were thereafter made, and semi-annual calculations of interest were added, so that on the 8th of January, 1903, the deposits and interest amounted to $1,638.98. Ellen Cunningham upon that date withdrew $200, leaving a balance of $1,438.98, to which semi-annual additions of interest were added, so that at the date of the filing of the bill there was in this account a balance of $1,492.52. Ellen Cunningham and Honora Finerty were Irish women, and were each domestic servants. They were friends, and intimately acquainted with each other. In 1869 Honora Finerty, through the procurement of Ellen Cunningham, started a bank account with the Provident Institution for Savings, and deposited money in it until she went back to Ireland in 1876. This account stood in her own name, and after her return to Ireland in 1876 she made no

further deposits, nor were any other deposits made in this account. At that time there was some $1,200 to her credit, and she empowered Ellen Cunningham to draw from this account. At her request Ellen Cunningham drew the semi-annual interest paid by the bank on this account and forwarded the same to her in Ireland. Subsequently Ellen Cunningham, at the request of Honora Finerty, or with her consent, withdrew the entire balance remaining due Honora Finerty in this account and transmitted the same to her in Ireland. The account in controversy is not shown to have any connection whatever with the account of Honora Finerty just mentioned. Honora Finerty had no knowledge whatever of this account until after the death of Ellen Cunningham, and the latter never made any declaration to anyone concerning the same, and the case is bare of any testimony or evidence respecting it, save that evidenced by the passbook itself. Ellen Cunningham kept this passbook in her own possession, and it was found among her effects at her death, and upon one occasion she made a draft upon this account for her own purposes. Since there was no contractual relation between these women, the account in controversy has no consideration to support it, and must be viewed as a pure gratuity. The allegations in the answer of Honora Finerty which would lead to a conclusion that there was consideration to support this account are not supported by any evidence whatever, and must have been made by counsel under a misapprehension of fact.

This case presents the bald, bare question of the right to a chose in action arising from a deposit of the money of a depositor in a savings bank, in the depositor's own name, in trust for another. So far as my own research has resulted, and so far as that of counsel has furnished me with data, this is the first case presenting this unqualified question in this state. The right of the person named as *cestui que trust* to have the fund on deposit must rest upon one of two theories, *i. e.*, that it was a gift *inter vivos* by the depositor to her, or that it was a valid trust now enforceable by her. In either event the intention must be clearly proven, and such intention must be shown to have been carried into effect by the donor or settler. The nature and amount of proof required, and the essentials to be proven,

are similar with respect to each of the two necessary contentions. The form of the transfer and the time of enjoyment by the beneficiary may be different with respect to a trust, but there must be the same definiteness and clearness of proof of the completed execution of intention in the one case as in the other. It is clear that the depositor in this case did not intend to make a gift *inter vivos* to Honora Finerty of the money deposited. If she had intended to do this, she would either have deposited the money in the name of Honora Finerty, so that the latter could have drawn it at will, or, if she preferred to put it in the form of a trust, she would have vested Honora Finerty with power to draw immediately, or under conditions which she might specify, from the trust funds. Since, by the retention of the passbook, and the failure to disclose to Honora Finerty the existence of this account, and the failure to vest Honora Finerty with the power to draw upon it, the depositor retained in her own power complete dominion over the chose in action, it must be held that there is not sufficient evidence of a gift *inter vivos*. "In order to legalize such a gift, there must be not only a donative intention, but also, in conjunction with it, a complete stripping of the donor of all dominion or control over the thing given." *Stevenson* v. *Earl, 65 N. J. Eq. (20 Dick.) 721* (at *p. 725*) (*Court of Errors and Appeals, 1903*). The depositor therefore must be held to have intended some other thing than a gift *inter vivos*. It is, in my judgment, equally clear that she did not intend to create a trust operative *inter vivos*. The court of errors and appeals, in the case last cited, quotes the following language with approval: "The one thing necessary to give validity to a declaration of trust—the indispensable thing—I take to be that the donor or grantor, or whatever he may be called, should have absolutely parted with that interest which had been his up to the time of the declaration—should have effectually changed his right in that respect and put the property out of his power, at least in the way of interest." The depositor in the case in hand did not so circumstance herself. By retaining the passbook, and refraining from disclosing to anyone her intention with respect to the money deposited, she retained complete dominion and complete interest.

While the courts, in the many cases which have dealt with the intention with respect to gifts and trusts, have refused to lay down any arbitrary, inflexible rule, they substantially agree that something more is necessary with respect to deposits in banks than the mere opening of the account in the name of the depositor in trust for another. This may have been done for any one of a number of reasons, each without donative purpose. There must be some unequivocal act or declaration clearly showing that an absolute gift or trust was intended. I do not enter upon an extended review of the cases in other jurisdictions, because I think the principles to be applied have been settled in this jurisdiction, and if there is conflict elsewhere, no benefit results from citing the conflicting decisions. The cases will be found in those cited and in the notes referred to.

It may be in this case that the depositor merely used Honora Finerty's name as she did the names of certain of her dead relatives, because it was a convenient designation of an account. For all that appears, she may, for any one of numerous reasons, have desired to have separate accounts, and knew of no other way to designate them, or preferred this way of designating them. Unless she made some unequivocal expression of intention, she failed to effectually declare the trust, and hence failed to show that a trust was intended. By retaining complete dominion over the chose herself, and drawing from the account; by refraining from making any declaration respecting it or giving any notice concerning it, she certainly showed that she did not intend that the trust (if she intended a trust at all) should be operative during her lifetime. The case is almost, if not quite, indistinguishable from the familiar one of a person making a written statement of trust with respect to personal property which he retains in his own possession. In every such case the written statement is held ineffectual to establish an enforceable trust, and some other and further act or declaration is required. The most rational inference to be drawn from the circumstances, and that which I conclude to have been the fact, is that Ellen Cunningham desired to deposit her own moneys in this account in such a way that she would always be able to use them at her will during her life, but that at her death, if any-

thing remained in the account, it should go to her friend, Honora Finerty. The court of appeals of New York reached the conclusion that this was the proper inference to be drawn under similar circumstances. "When a deposit is made in trust, and the depositor dies intestate, leaving it undisturbed, in the absence of other evidence, the presumption seems to arise that a trust was intended in order to avoid the trouble of making a will." *In re Totten, 179 N. Y. 112* (at *p. 124*) ; *71 N. E. Rep. 748* (at *p. 752*). In this case the court of appeals of New York reached the conclusion that the trust which it found to exist was valid, and that the beneficiary thereof could recover the balance of the money on deposit at the death of the depositor. Our court of errors and appeals, however, has reached an opposite conclusion upon this subject, and has held that a disposition of property not to take effect until the death of the owner is testamentary in character, and that the statute of wills requires it to be made in a particular way, and that it will not be effectual. if not made in that way. *Stevenson v. Earl, supra.* The New York court of appeals, in the *Totten Case,* formulated its doctrine in the following language (*179 N. Y. 125; 71 N. E. Rep. 752*) : "A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary, without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." This decision has been much commented upon by legal writers, and is well described by Wilbur Larremore, in an article on "Judicial Legislation in New York," in *14 Yale Law J. (No. 6) 315.* He there says, speaking with respect to this case, as follows:

"This decision has been widely commented upon by legal journals, and so far as the writer is aware, has been unanimously disapproved. It is inconsistent with earlier authorities in the State of New York. It intro-

duces a serious anomaly into the law of trusts. Indeed, a trust that is revocable at the will of the creator can hardly be said to be a trust at all. It impugns the policy of the statute of wills, by permitting a disposition of property to take effect only after death, without following the testamentary requirements. On the other hand, as a piece of constructive legislation, the decision could hardly be too highly praised. It effectuates a custom which has grown up among the humbler classes of people, who, in placing their money on deposit in trust for other persons, often intend to retain the right to use it, principal as well as interest, during life, but that whatever remains at the time of death shall go to the *cestuis que trust.* Under the law as it stood, the estates of depositors who as trustees had drawn money from accounts would be liable to refund the same to the *cestuis que trust.* The validation of the business custom in question seems so unobjectionable, indeed so desirable, that the writer has on various occasions advocated the enactment of a statute on just the lines laid down in the *Matter of Totten.* He did not believe that a court would venture upon such a radical innovation, and it is difficult to justify it as an exercise of judicial power."

In our own state there is no direct authority with respect to savings bank deposits of the nature of the one dealt with in the case in hand, but the general principles to be applied are, I think, clear, and will be found stated in *Cook* v. *Lum,* 55 *N. J. Law 375, 376 (Supreme Court, 1893)* ; *26 Atl. Rep. 803,* and in *Stevenson* v. *Earl, supra.* In *Dunn* v. *Houghton, 51 Atl. Rep. 71 (Vice-Chancellor Stevenson, 1902),* the previous cases are cited and commented upon. While that part of the decision in *Dunn* v. *Houghton* which holds that the statute of wills does not prevent a trust operative only at the death of the settler may be in conflict with the principle subsequently laid down in the case of *Stevenson* v. *Earl* (and I do not stop to consider or determine this), much that is said, and the review of the New Jersey cases therein contained, sustains the principles which I deem applicable in the case in hand.

Counsel for Honora Finerty placed great, if not entire, reliance upon the cases of *Janes* v. *Falk,* 50 *N. J. Eq. (5 Dick.) 468 (Court of Errors and Appeals, 1892)* ; *26 Atl. Rep. 138; 35 Am. St. Rep. 783,* and *Collins* v. *Steuart,* 58 *N. J. Eq. (13 Dick.) 392;* affirmed on the opinion below, *sub nom., Collins* v. *Lewis,* 60 *N. J. Eq. (15 Dick.) 488.* From these cases counsel deduced the principle that a declaration of trust such as that evidenced by this bankbook was all-sufficient. I do not think that this is a warrantable deduction from the reasoning of the

learned judges writing the opinions in those two cases. In each of them the court found, as a matter of fact, that there were unequivocal declarations of intention by the grantor or settler or assignor sufficient to show a purpose to transfer his interest in the subject-matter. In the *Collins Case* the oral testimony is cited (*58 N. J. Eq.* (*13 Dick.*) *395*), which led the court to find that it was intended that the declaration of trust was to become operative from the time of its execution, and in the *Janes Case,* in addition to the letter stating his purpose, there was positive evidence that he had informed the beneficiaries of what he had done, and the court held "these purposes, acts and declarations are not equivocal."

I therefore conclude, in the case in hand, that there is no sufficient evidence of the intention of Ellen Cunningham that the money which she deposited in the bank in her own name, in trust for Honora Finerty, should be operative as an immediate gift *inter vivos* or as a trust *inter vivos;* and I further hold that if her intention was to retain complete dominion and control over the chose during her lifetime, and that it should pass to Honora Finerty at her death, such purpose was not effectuated in the only way in which it can be done under the laws of this state, because it was not done in accordance with the provision of the statute of wills.

I will advise a decree that the sum of money in controversy belongs to the administrator of Ellen Cunningham, deceased.

*Messrs. Carrick & Worlendyke,* for the appellant.

*Messrs. Collins & Corbin,* for the respondent August J. Nicklas, administrator of Ellen Cunningham, deceased.

*Mr. Elmer H. Geran* and *Mr. Henry M. Stevenson,* for the respondents Bridget Parker and others.

*Messrs. Hartshorne, Insley & Leake,* for the respondent Provident Institution for Savings in Jersey City.

Affirmed on the opinion delivered in the court below.

*For affirmance*—The Chief-Justice, Garrison, Fort, Garretson, Hendrickson, Pitney, Swayze, Reed, Trenchard, Bogert, Vredenburgh, Vroom, Green, Gray, Dill—15.

*For reversal*—None.