THE PLAINFIELD TRUST COMPANY, AS SUBSTITUTION-ARY ADMINISTRATOR WITH THE WILL ANNEXED OF THE ESTATE OF ALBERTINA T. RUSSELL, DE-CEASED, PROSECUTOR, v. JOHN McCUTCHEON, AS COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY, AND ALBERT C. MIDDLETON, AS TREASURER OF THE STATE OF NEW JERSEY, RE-SPONDENTS.

Argued May 7, 1930—Decided July 16, 1930.

Before Justices PARKER, CAMPBELL and BODINE.

For the prosecutor, *Walter E. Cooper.*

For the respondents, *William A. Stevens* and *William A. Moore.*

PER CURIAM.

This is a review of a transfer inheritance tax assessment made by the comptroller. Mrs. Albertina T. Russell, late of Princeton, New Jersey, March 10th, 1916, created four separate trusts for the benefit of each of her children. From her separate property she transferred to herself and her husband, the late Archibald D. Russell, as trustees, certain stocks and bonds. Each instrument is in similar form and provides for the payment of the income from securities set apart to each of the children during the lifetime of two of the other children with remainders over unless sooner terminated. The settler's thought is apparent. She sought to provide an income for each child, but nevertheless retained the purse strings.

The third paragraph of each of the instruments, so far as pertinent, is as follows: "Notwithstanding any of the provisions to the contrary, * * * the trustees herein named or the survivor of them [Mrs. Russell and her husband], whether serving along or otherwise [but not any succeeding trustee appointed as herein authorized] are authorized and empowered at any time after the execution of this agreement, by instrument in writing duly signed and acknowledged by said trustees or the survivor of them, to direct the distribution of said trust estate and any part or parts thereof * * * to and among the issue then living of the grantor and the husbands and wives then living of any issue *and to and among any other person or persons or corporations whatsoever.*"

It is apparent from this clause that the power of Mrs. Russell and her husband, or the survivor of them, to absolutely defeat the interest of the beneficiaries named existed. True, neither of them could retake in their own hands the funds set apart but both were very rich. The deed enabled the parents, or the survivor, to bring absolute financial pressure upon their children. They, or the survivor, had the same control over the funds as though no settlements whatsoever had been made except in this, that neither could personally absorb the fund. Mrs. Russell died February 11th, 1918; her husband November 29th, 1919.

The stipulation of facts states that the tax was imposed "on the ground that the decedent had transferred and conveyed the *res* during her lifetime to take effect in possession and enjoyment after her death, and not on the ground that the said transfers were made in contemplation of death."

A power reserved to revoke, alter or amend a declaration of trust is sufficient to make the transfer one intended to take effect in possession or enjoyment at or after death within the purview of the Transfer Inheritance Tax law. *In re Fosdick Estates,* 139 *Atl. Rep.* 318; 6 *N. J. Adv. R.* 28.

"An outstanding power residing exclusively in a donor to recall a gift after it is made a limitation on the gift which makes it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers." *Chase National Bank* v. *United States,* 278 *U. S.* 327, 336.

"So long as the privilege of succession has not been fully exercised it may be reached by the tax. See *Cahen* v. *Brewster,* 203 *U. S.* 543; *Orr* v. *Gilman,* 183 *Id.* 278; *Chanler* v. *Kelsey,* 205 *Id.* 466; *Moffitt* v. *Kelly,* 218 *Id.* 400; *Nicke* v. *Cole,* 256 *Id.* 222. And in determining whether it has been so exercised technical distinctions between vested remainders and other interests are of little avail, for the shifting of the economic benefits and burdens of property, which is the subject of a succession tax, may even in the case of a vested remainder be restricted or suspended by other legal devices. A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. *Bullen* v. *Wisconsin,* 240 *Id.* 625. The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another." *Saltonstall* v. *Saltonstall,* 276 *Id.* 260.

It is urged that no power of revocation being reserved that the power in trust to revoke in the case *sub judice* stands on a different footing and does not operate so as to make the transfer one intended to take effect at death. This seems a distinction without a difference. The settler was Mrs. Russell. The trustees were Mr. and Mrs. Russell. The power

to strip the life tenant and the remaindermen of all right and to choose a new object of their bounty ran to the trustees, or to the survivor.

Vice-Chancellor Buchanan said, with clarity, *In re Fosdick Estates*, 6 *N. J. Adv. R.* 28: "It is true that there is an actual transfer of the legal title to the trustee, and of some equitable interest to the equitable donee at the time of the delivery of the trust deed. But that equitable interest of the donee is not an absolute interest. It is defeasible at any moment the donor decides to revoke. The situation is perhaps a little clearer—though the principle is of course the same—if we suppose the interest of the equitable donee to be a term for years instead of a life estate. The present value of an interest consisting of the absolute right to the income from a fund for fifty years would be susceptible of fairly easy calculation and ascertainment. But what value (other than the income already accrued) would there be to such an equitable term for years, if it was subject to termination at any moment? Looking at it from the opposite standpoint, the interest of the donor in the trust fund, in view of this right to revoke, is not a mere equitable remainder after the equitable life estate. It is that plus a right to repossess and own and enjoy, absolutely, the entire fund at any moment he chooses. The value of such a right is obviously practically the same as the value of the trust fund; and the value of the defeasible life estate is little or nothing, until the termination of the right to revoke, by and at the death of the donor. At that time, and not before, does the life tenant come into possession and enjoyment of the absolute right, which is the thing of real value."

Obviously, no permanent right accrued to the life tenant, or the remaindermen, until after the death of the settler and her husband. The mere fact that the settler could not retake made the interest of the beneficiary no more secure. In fact, the beneficiaries had no security until after the death of both parents. The case is obviously different from *Reinecke* v. *Trust Co.*, 278 *U. S.* 339, where the beneficiary must consent to the revocation. The mere naming of two trustees did not enlarge the rights of the beneficiaries.

Nothing vested in permanent enjoyment until after the death of Mrs. Russell. True, she could not retake either principal or income for her own benefit, but she could grant both principal and income to any one she chose, if her husband acquiesced, so that in no sense was there a transfer until after her death. *Saltonstall* v. *Saltonstall*, 276 *U. S.* 260; *New England Trust Co.* v. *Abbott*, 205 *Mass.* 279.

Further, though the transfer of permanent enjoyment was not effected until after the death of Mr. Russell the situation is precisely the same as though the transfer occurred at Mrs. Russell's death. The taxing statute is levied upon transactions to take effect at or after the death of the transferor. No part of Mrs. Russell's property passed to the beneficiaries named in the trusts save the income they were permitted to take until after her death, and that is the test of taxability.

In view of a number of cases in this state, notably *Carter* v. *Bugbee*, 91 *N. J. L.* 438; *affirmed,* 92 *Id.* 390, and *Farmers Loan and Trust Co.* v. *Bugbee*, 6 *N. J. Mis. R.* 415, we think it unnecessary to consider the prosecutor's arguments that the Transfer Inheritance Tax act contravenes the constitutions of this state or the United States.

The tax as levied will be affirmed.