This is a suit brought by the administratrix of the estate of Drusilla Jones to determine the ownership of moneys deposited by her in the Savings Investment and Trust Company of East Orange. The account was opened as follows:
"Savings Investment and Trust Company in account with Mrs. Drusilla Jones, in trust for Betty Harrigan."
Betty Harrigan claims ownership in the account, first, on the ground that at the time of its opening Drusilla made an *Page 548 
absolute gift inter vivos. The facts of the case are that prior to November 27th, 1929, Drusilla had a savings account in the Orange Savings Bank. On that date she withdrew the moneys by check and deposited them as stated. Thereafter two withdrawals were made, and one deposit. Vouchers required by the bank were signed "Drusilla Jones her mark." One witness says that at least on one occasion Mrs. Jones presented the bank book unaccompanied by any person, and the bank teller witnessed her mark. Henry Mayo, the father of defendant, in testifying as to statements made by Drusilla said: "She said she made it over in trust for Betty, and Betty would have everything at her death, that is what she said. She would reward her at death; that she wanted Betty to have this money after she died; that she, Drusilla Jones, was to have a right to use the money while she lived, but it was to go to Betty when she died." Betty Crawford, a witness for the defendant, said: "She said that she wanted Betty to have everything whenever she deceased."
Without citing numerous authorities, it is perfectly clear that this does not constitute a gift inter vivos. There is no absolute donative intention. There is no actual delivery of the subject-matter of the gift, and the donor did not strip herself of all ownership and dominion over the subject-matter of the gift, although it may be true that the bank book was in the possession of Betty a considerable part of the time. I need only quote Crane v. I. Seymour Crane, Inc., 100 N.J. Eq. 400.
Drusilla was a widow, earning her own living. The bank account constituted all the property she had. Even without the evidence above stated, I think it highly improbable that she would have given away her only means of support. It was, if anything, an attempt to make testamentary disposition in a manner not in accordance with the statute of wills and is therefore invalid. It may be noted here that although Betty had possession of the bank book at least some part of the time, Drusilla had it at other times.
The next point raised by counsel for defendant is that there was a completed trust in favor of Betty Harrigan. There is nothing in the answer alleging such a defense. However, *Page 549 
I do not think it would avail even if it had been properly pleaded. There must be some unequivocal act or declaration showing intention to create a trust. In the case of Nicklas v.Parker, 69 N.J. Eq. 743, affirmed in 71 N.J. Eq. 777, by the court of errors and appeals, it was said at page 781 in the words of Vice-Chancellor Garrison:
"While the courts, in the many cases which have dealt with the intention with respect to gifts and trusts, have refused to lay down any arbitrary, inflexible rule, they substantially agree that something more is necessary with respect to deposits in banks than the mere opening of the account in the name of the depositor in trust for another. This may have been done for any one of a number of reasons, each without donative purpose. There must be some unequivocal act or declaration clearly showing that an absolute gift or trust was intended."
Vice-Chancellor Backes said, in National Newark and EssexBanking Co. v. Rosahl, 97 N.J. Eq. 74 (at pp. 75, 76):
"The distinction between trusts thus created and transfers of property to take effect after death, as in Stevenson v. Earl,65 N.J. Eq. 721, upon which the administrator relies, is that in the one the property immediately passes out of the donor while in the other it remains in him and passes at death. The doctrine of that case, as pointed out by Chancellor Walker, in Robeson v.Duncan, 74 N.J. Eq. 745: `Applies to the disposition in his lifetime of property which will be in the donor at the time of his death; the tradition to take place at or after death. * * * It can have no application to a case where the grantor has by his conveyance divested himself of his property in his lifetime.' The courts have frequently upheld such trusts as against attacks, that they were testamentary. Green v. Tulane, 52 N.J. Eq. 169.
See, also, New Jersey Title Guarantee and Trust Co. v.Archibald, 91 N.J. Eq. 82; Kaufman v. Edwards, 92 N.J. Eq. 554; Dunn v. Houghton, 51 Atl. Rep. 71. When, however, it plainly appears that a revocable trust to take effect in enjoyment at the death of the trustor was created in evasion of the statute of wills, equity will decline to enforce them." *Page 550 
I shall, therefore, advise a decre in favor of the complainant.
Before concluding this opinion, I wish to call attention to another phase of this matter. I quote the following extract from the brief of defendant:
"When Drusilla Jones went to the Savings Investment and Trust Company of East Orange in November, 1928, and opened up an account in her own name, `Trustee for Betty Harrigan,' she went in the profound happiness that nobility of purpose alone can give, with a heart warmed by the glow of benevolence, and with the consciousness that she had repaid long years of unselfish service and devotion to the utmost limits of her ability to express her gratitude. She was expressing her appreciation, not merely in words [which cost nothing], but in acts intended to give to Betty Harrigan all she had. At least that's what she thought she was doing. But did she do so? Or was she only mistaken in thinking she had done so?
"But what is this cloud which casts its gloom across her expressed purpose and threatens to obscure it completely? Is it the ominous shadow of the law which dooms her plan to disaster? Or is it only an imaginary ghost which has no real existence and which will fade away upon being courageously faced?
"Will the law — the alleged embodiment of reason — assist in accomplishing the lawful and expressed designs of human beings, conceived in kindness and goodness of heart, and carried out as completely as an ordinary mind could think possible? Or is the law only a sardonic joke, laughing mirthlessly as it frustrates noble human purposes, and which gives a contrary meaning to human intents; which says: `This thing which you think you have done, you have not done; this thing that seems to mean one thing, in fact means exactly the reverse. Your friends who have been kind to you and who have done things for you and to whom you thought to give your property, will get none of it; your relatives, who for years ignored you and did nothing for you, and whose greed you sought to thwart, and who would not pay a penny *Page 551 
for a single flower to lay on your grave, will get all your money.' One can imagine the ignorant layman, confronted with such a situation, snorting contemptuously: `So that's the law! Well, it may be law, but it certainly isn't justice!'"
This is a violation of the fundamental rules concerning the drawing of briefs. As the name implies, a brief should succintly state the facts in the case, cite the law which the scrivener deems applicable to these facts and briefly make what argument seems necessary in the application of the law as he sees it to the facts as they appear. Bombast of the kind above quoted is frivolous, unnecessary and impertinent. It wastes time, throws no light whatever on the matter under discussion and is not appropriate to the serious consideration of legal questions. It is an imposition on the court to file a brief of twenty-five typewritten pages interspersed with surplusage of this character.