The Second National Bank of Paterson, complainant-respondent,

*v.*

Charles Curie, defendant-appellant, and Etta D. Curie, defendant-respondent.

[Submitted February 16th, 1934.  Decided May 4th, 1934.]

On appeal from a decree advised by Vice-Chancellor Bigelow, whose unreported memorandum opinion is as follows:

"This is a suit by a trustee seeking the advice of the court. The real controversy is between the defendants Charles Curie and Etta D. Curie, his wife, both of whom have filed counter-claims.

"The trust was created in 1928 by a formal instrument between Mr. Curie as donor, the bank as trustee, and Mrs.

Curie as the principal beneficiary. At the same time that the trust indenture was executed and pursuant thereto, Mr. Curie transferred and delivered to the trustee securities then worth some $235,000. The provisions for the distribution of the income and *corpus* of the trust estate are as follows:

" '3. To pay the beneficiary during the period of her natural life and until her death, the net income of said securities, not exceeding however, the sum of $12,000 per annum, and to pay to the donor during the period of the life of the beneficiary, and thereafter during the life of the donor, all income of said securities in excess of $12,000 per annum. The payments of income herein provided shall be made quarterly on the fifth day of January, April, July and October in each year. If at the time of the death of said beneficiary the donor shall be living, then thereafter, that is to say, after the death of the beneficiary, to pay all of the said net income to the donor during the period of his natural life, and upon his death to pay the said income to the lawful issue of the donor and the beneficiary *per stirpes* and not *per capita* until the youngest of such issue shall attain the age of twenty-one, at which time the said trust shall cease and terminate and the principal thereof shall be paid to such issue *per stirpes* and not *per capita*, to have and to hold to them and their heirs absolutely and forever. In the event of the death of the donor prior to the death of the beneficiary, it is stipulated and agreed that upon the death of the beneficiary, the income of the trust fund shall be paid to the lawful issue of the donor and the beneficiary *per stirpes* and not *per capita* until the youngest of such issue shall have attained the age of twenty-one years, at which time this trust shall cease and terminate and the principal thereof shall be paid to such issue *per stirpes* and not *per capita*, to have and to hold to them and their heirs absolutely and forever. In relation to the payment of income as in this paragraph provided for, it is agreed that any income which may have accrued, but which has not been paid at the time of the death of either beneficiary or the donor, shall be collected and paid to the successor or successors of the trust income as herein provided.'

"The trust indenture also contains the following agreement on the part of Mr. Curie:

" '10. The donor further undertakes and agrees in order to assure to the beneficiary an annual net income of $12,000 per annum throughout the period of her natural life that in the event the securities hereinabove enumerated, or others which may be substituted for them, as herein provided, may be or become insufficient or inadequate to produce such annual income of $12,000 per annum as aforesaid, to add to the securities constituting the principal of this trust fund, other securities, the income from which shall be suffi-

cient to make up any deficit in the stated annual income herein provided for, it being understood and agreed however, in the event that the income at any time hereafter derived from such principal shall exceed the specified income of $12,000 per annum, the excess thereof shall be paid to the donor if living, and if deceased, then to the donor's estate.'

"The securities in the trust estate produced in 1932 an income of only $7,633. Mrs. Curie, by her counter-claim, prays specific performance of Mr. Curie's undertaking to provide additional securities to make up the deficit in the income. Mr. Curie, by his counter-claim, prays that the trust be declared invalid and the trustee be directed to return to him the securities which it holds.

"The basis of Mr. Curie's prayer is briefly this: He and his wife at the time of the creation of the trust were, and they still are, residents of New York, and therefore the validity of the trust must be determined by the law of that state; the term of the trust is a longer period than the continuance of two lives, namely, the lives of Mr. and Mrs. Curie, and further until the youngest of their issue shall attain the age of twenty-one years; this is contrary to the Personal Property law of New York, section 11, relating to perpetuities, and hence the whole scheme is illegal. Mrs. Curie answers that the securities which were transferred to the trustee when the trust was set up, were then in the State of New Jersey; that the trustee corporation was then and has since continued to be located in this state; that the parties intended the trust estate here to be held and administered in accordance with our law, and that the New York statute does not control.

"The situs of a trust of personalty created *inter vivos* is at the domicile of the donor and the law of the state in which the trust has its *situs* determines its validity. Such is our New Jersey rule. *Swetland* v. *Swetland, 105 N. J. Eq. 608; affirmed, 107 N. J. Eq. 504.* The question is, would a New York court interpret the statute so as to invalidate this particular trust under the circumstances shown by the pleadings and the evidence? In *Hope* v. *Brewer, 136 N. Y. 126; 32 N. E. Rep. 558,* the court of appeals said: 'Our law with

respect to the creation of trusts, the suspension of the power of alienation of real estate, and the absolute ownership of personal, was designed only to regulate the holding of property under our laws and in our state, and a trust intended to take effect in another state, or in a foreign country, would not seem to be within either its letter or spirit.' In *Robb* v. *Washington and Jefferson College, 185 N. Y. 485; 78 N. E. Rep. 359,* a trust created *inter vivos* by a resident of New York was before the court. 'The trustee is a corporation created by and located in the State of Pennsylvania. The fund is to be there held and the trust to be there administered. Therefore, if the trust, though invalid by our law, is legal under the laws of Pennsylvania, the fund should be transmitted to that state and the trust upheld.'

"The last case to which I will refer is *Hutchison* v. *Ross, 262 N. Y. 381; 187 N. E. Rep. 65,* decided July 11th, 1933. Mr. and Mrs. Ross were residents of the province of Quebec. Mr. Ross created a trust fund for the benefit of his wife and children and appointed a New York trust company trustee. If the trust were governed by the laws of Quebec, then the trust was void. But the court upheld the trust on the ground 'that the validity of a trust of personal property must be determined by the law of this state when the property is situated here and the parties intended that it should be administered here in accordance with the laws of this state.'

"A consideration of these decisions satisfies me that the New York court of appeals would resolve that the New York statute does not invalidate the Curie trust; that the statute does not control a trust established and to be administered outside the state. The courts of New Jersey will not give to the statute an effect more broad. The trust created by Mr. Curie is valid under the law of New Jersey; comity would not be served by declaring it invalid by reason of a rule of New York which, the courts of that commonwealth hold, does not effect the trust. As directed by the *Swetland Case,* we apply the New York law, but in so doing, we take the interpretation of that law from the New York court of appeals. The result is that Mr. Curie's counter-claim will be dismissed.

"I turn to the counter-claim of the wife. The instrument which is the basis of the controversy is of a dual nature. It defines a trust in the securities assigned to the bank, and in the tenth paragraph it contains a covenant by the husband under circumstances which have come to pass 'to add to the securities constituting the principal of this trust fund, other securities, the income from which shall be sufficient to make up any deficit in the stated annual income herein provided for.' It is this promise which Mrs. Curie prays may be specifically enforced by the court.

"A court of equity will not enforce an executory contract to create a trust unless the contract is supported by a valuable consideration. *Wittingham* v. *Lighthipe, 46 N. J. Eq. 429.* Mrs. Curie contends that there was good and valuable consideration for the covenant, namely, (1) she agreed to relinquish her dower in her husband's property by joining in the execution of deeds whenever requested; (2) she abandoned her cause of action against her husband for separate maintenance, or at least forebore to sue; (3) the trust indenture was part of a general settlement of all the various disputes and differences between husband and wife.

"The indenture recites that 'the donor and the beneficiary have, by mutual consent, and in settlement of various matters affecting them, jointly and severally, and for valuable considerations moving from one to the other, agreed to the creation and acceptance as hereinafter provided for, of the trust herein and hereby created.' The consideration or lack of consideration of a contract may be shown by parol. *Voigt* v. *Dowe, 74 N. J. Eq. 560.*

"Concurrently with the execution of the trust indenture, Mrs. Curie signed a separate paper which counsel called the 'sister agreement' and which I quote in full:

" 'In appreciation and recognition of the creation of the irrevocable trust fund in my favor by my husband, Charles Curie, but not as a consideration therefor, which fund provides for an annual income of $12,000 for me during my life, irrespective of any other income which I may derive from any other source. all as particularly set forth in an agreement or indenture of trust, dated August 15th, 1928,

" 'I, Etta D. Curie, do solemnly and sincerely promise, consent and agree:

" '*First:* That I will at any time hereafter, upon the request of my husband, the said Charles Curie, join with him in the execution of any deed or mortgage, affecting any real property which he may now own, or may hereafter own, thereby waiving all dower or right of dower in or pertaining to such real property and I will, upon his request, execute and deliver to him or to his designee any and all papers needed or required to grant and release my right of dower in and to any and all real property which my said husband owns, or may hereafter own, or in which he has, or may hereafter have any interest, wheresoever situated.

" '*Second:* That I will not object, nor offer any opposition to my said husband seeing his sister, visiting her, writing to her or communicating with her, or having business or social relations with her, at any time or place which he may wish or desire, or find expedient.

" '*Third:* That I will consult with my husband and fully and frankly discuss with him, before any action on my part, all matters respecting the location of the home for ourselves and our children, both permanent and the summer vacations.'

"This is the only agreement by Mrs. Curie to release dower. Observe that the paper expressly denied that it is given as consideration for the trust agreement. Both documents were drawn after many conferences between Mr. and Mrs. Curie and the latter's counsel. A preliminary draft of the sister agreement was the subject of counsel's letter to Mr. Curie of July 12th, 1928: 'It is unsatisfactory, in that, among other things, you have related it to the creation of the trust agreement, and in effect as a consideration therefor. You will readily see, as a lawyer, that its signature by Mrs. Curie might later on raise some possible question as to the continuance of the trust. The trust is a thing separate and apart from the understandings that were to be arrived at in regard to waiver of dower and relations with your sister.' A few days later, after another conference, he again wrote Mr. Curie: 'There was one remaining detail in Mrs. Curie's mind on the occasion of the meeting and that was that she seemed to feel that the paper you drew was an effort to establish a relation between it and the trust agreement to the end that you might have opportunity to petition for a revocation of the trust agreement on the ground that she had failed in some way to carry out her promises.' A promise by one party may or may not be the consideration for a promise by the opposite party made at the same time, depending upon the

intention of the parties. Mrs. Curie did not intend that the sister agreement should be a consideration for the trust indenture. This she desired to avoid. She foresaw that in the future she might breach her own agreement or be charged with doing so, and the breach or charge might affect the trust. Again, she was unwilling to appear to herself or to others in the attitude of settling for money those difficulties with her husband in which money was not the bone of contention. Mrs. Curie's promise to waive dower was not a consideration for the agreement of her husband to add to the trust fund.

"I take up next the alleged settlement of the cause of action for separate maintenance. 'The compromise of a disputed claim made *bona fide* is a good consideration for a promise whether the claim be in suit, or litigation has not been actually commenced, even though it should ultimately appear that the claim was wholly unfounded. The detriment to the party consenting to a compromise arising from the alteration in his position forms the real consideration which gives validity to the promise. The only elements necessary to a valid agreement of compromise are the reality of the claim made and the *bona fides* of the compromise.' *Grandin* v. *Grandin, 49 N. J. Law 508; Rue* v. *Meirs, 43 N. J. Eq. 377.* Mrs. Curie testified that her husband was quarrelsome and abusive and on at least one occasion did her physical violence; that she would have left her husband if the agreement had not been made; that her counsel advised her to leave and told her she could get a very substantial sum for the maintenance of herself and her children. Her husband's income exceeded $75,000. The evidence, though slight, is enough to show a cause of action, the compromise of which would be a valuable consideration.

"The lawyer who advised her in the negotiations leading to the creation of the trust, on being asked whether her promises contained in the sister agreement were not the whole consideration for the trust indenture, testified: 'No, I think the main consideration was a very personal one to both of them; that the captain (Curie) didn't want Mrs. Curie to get out;

didn't want to have the home broken up, and Mrs. Curie had indicated her intention to do that unless the differences were adjusted to her satisfaction.' I quote from Mrs. Curie: 'We went to General Ryan's office and acknowledged the sister agreement, and when we came home I tried to kiss him and clean the whole slate and have everything go on as we had formerly done; that was my idea through the whole thing. But he pushed me aside and from that day to this has refused.' Again, 'I wanted to do the thing fair; I thought we were going to have a complete reconciliation.'

"The parties had been quarreling for years. Mrs. Curie was extravagant; her husband was rude, inconsiderate of her feelings. Matters had been getting worse as time went on and Mrs. Curie resolved to leave her husband and seek relief in court. A settlement was reached, and the wife forebore to separate herself from the husband and to sue. That she made no express promise to forebear is unimportant. *Ans. Cont. 109.* She changed her position, she condoned past offenses.

"I think there was sufficient consideration for Mr. Curie's covenant, and that it is enforceable in this suit. As to the exact nature of the relief and the form of the decree, I will hear counsel."

*Mr. Edward A. Markley,* for the appellant.

*Mr. Ralph E. Lum* and *Mr. Chester W. Fairlie,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The principal controversy between the parties is fully set out in the memorandum opinion of the vice-chancellor and needs no repetition here.

The case was submitted on briefs without oral argument and the points made and argued in those briefs have been fully and carefully considered.

The first principal point made for the appellant is that there was error on the part of the vice-chancellor in determining that the trust agreement was supported by a valuable consideration. We are satisfied that there was no such error and are content to rest our holding in this regard upon the reasoning of the vice-chancellor.

The second main point for the appellant is that the court of chancery erred in determining that the trust agreement was valid when construed by the law of New York. The principal argument against the validity of this agreement was based upon the claims that it was void because of the statute of perpetuities. The New York counsel involved were fully aware of this and, as stated by the vice-chancellor, undertook to invoke the New Jersey law by bringing both parties over into this state to execute the agreement, designating a New Jersey corporation as trustee, and lodging all the securities which were the subject-matter of the trust with that trustee in Paterson. It is nevertheless argued that the New York law remained applicable. We find it unnecessary to determine this point. In fact, it may well be that the agreement is vulnerable to the rule of perpetuities existing in this state, because the trust is limited, after the death of the husband and wife, "to the lawful issue of the donor and the beneficiary *per stirpes* and not *per capita* until the youngest of such issue shall have attained the age of twenty-one years." There is nothing here to restrict the application of this clause to the issue of the donor who were *in esse* at the time of the execution of the agreement, and it is altogether conceivable that other issue might be born thereafter. However, it is unnecessary to pass directly on this point, because the rule appears to be settled in this state that even although 'the ultimate gift of *corpus* is void under the rule against perpetuities, the prior gifts will not be invalid if they do not themselves contravene the rule against perpetuities, unless they are so inseparably interwoven with the invalid gift as necessarily to fall with it, or unless merely incidental to and in aid of the main invalid gift." *McGill* v. *Trust Co., 94 N. J. Eq. 657,* affirmed as to the point under consideration in *96 N. J. Eq. 331.*

The Curie children were not made parties to the present litigation, and apparently both sides agree that they are not particularly interested in the present controversy. We concur in this view. The only subject-matter of the appeal is the question whether the trust for the benefit of the wife for her life is a valid trust and whether it should be enforced strictly according to its terms. It is unnecessary, therefore, to intimate any definite decision on the second main point.

The third and fourth points are that paragraph 10, quoted in the opinion of the vice-chancellor, *supra,* is in effect a contract between husband and wife, and is not fair and just; and that the court of chancery erred in decreeing specific performance of the trust agreement. We take the view that the agreement in these aspects was in its essence and purpose an agreement for the reasonable and suitable support of the wife according to her station and according to her husband's means and ability to support her, and that it comes therefore under the general class of agreements for maintenance where husband and wife are living apart and, as such, is subject to the control of the court of chancery, but not by way of specific performance. *Apfelbaum* v. *Apfelbaum, 111 N. J. Eq. 529.* The agreement itself may be regarded by the court as evidential with regard to the amount of money to be paid, though not controlling in that regard; same case, No. 60, October term, 1933. *115 N. J. Eq. 555.*

There are three other points stated in the brief but they are all covered by what has been said above.

We conclude that the decree of the court of chancery should be affirmed so far as it upholds the validity of the trust for the life of the respondent's wife. It seems plain that so far as relates to the actual lodging of the original securities in the hands of the trustee, this has the effect of an irrevocable settlement upon the wife for life of the beneficial interest therein. As regards, however, the obligation of the husband to supply other securities and make up deficiencies in income so as to keep an income figure of $12,000 a year in favor of the wife, these provisions are controlled by what we have said

in the matter of specific performance and are therefore within the discretionary regulation of the court of chancery.

The decree below is therefore reversed, for modification in the particulars above specified, and in other respects affirmed.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 15.