Louisa Holt Colton died, testate, March 25, 1932, a resident of New Jersey.
The commissioner, in computing and assessing the transfer inheritance taxes, incurred at her death in respect of transfers of her estate, included as transfers taxable under the statute, transfers of four certain bank accounts or deposits opened by the decedent with two banks in New York City, in each of which considerable amounts remained at the time of her death. The only question on this appeal is whether or not such transfers from Mrs. Colton, of ownership of these bank accounts, as actually took place, are taxable under our statute, — P.L. 1909, c. 228, as amended by P.L. 1931, c. 303. If so, the tax assessment is correct and should be affirmed; if not, the assessment should be remanded for correction by eliminating those transfers from consideration.
The bank deposits in question were opened by Mrs. Colton, and all the deposits made therein were made by her and consisted of moneys owned by her at the time of deposit. The material facts as shown by the books of the respective banks, are as follows:
1. Account No. B-12742. Opened September 5, 1929. To the credit of "Mrs. Louisa H. Colton, in trust for brother, Henry E. Holt." Signature card, originally, "Louisa H. Colton;" changed, December 26, 1929, to "Louisa H. Colton, in trust for brother, Henry E. Holt."
2. Account No. 169853. Opened December 26, 1929. To the credit of "Henry E. Holt, Louisa H. Colton, Trustee." Signature card, "Louisa H. Colton, trustee, in trust for Henry E. Holt."
3. Account No. B-17158. Opened March 25, 1930. To the credit of "Mrs. Louisa H. Colton, in trust for Maria Hasbrouck." *Page 98 
Signature card, "Louisa H. Colton (of John Bowne) in trust for Maria Hasbrouck."
4. Account No. B-17683. Opened April 22, 1930. To the credit of "Louisa H. Colton." Signature card, "Louisa H. Colton (of John Bowne)."
The title to, or ownership of, these accounts was the subject of litigation in the court of chancery of this state, subsequent to the death of Mrs. Colton, between Mrs. Colton's executors on the one hand and Henry E. Holt and Maria Hasbrouck on the other. In that suit it was determined that the first two accounts belonged to Henry E. Holt, and the last two to Maria Hasbrouck. See Hudson Trust Co. v. Holt, 115 N.J. Eq. 34,169 Atl. Rep. 516. The commissioner did not, and does not, challenge or question the correctness of that determination; he in nowise contends that transfers of ownership of the accounts, from Mrs. Colton to her brother and cousin did not take place; his determination was simply that those transfers were taxable under our statute.
Bank accounts are intangible personal property; transfers thereof are taxable at the domicile of the owner, — Blodgett v.Silberman, 277 U.S. 1, 48 Sup. Ct. Rep. 410, 72 L.Ed. 740; — (indeed, taxable only at such domicile, First National Bank
v. Maine, 284 U.S. 312, 52 S.Ct. Rep. 174, 76 L.Ed. 313, FarmersLoan Trust Co. v. Minnesota, 280 U.S. 204, 50 S.Ct. Rep. 98,74 L.Ed. 371, and Baldwin v. Missouri, 281 U.S. 586, 50 S.Ct.Rep. 436, 74 L.Ed. 1056). If a transfer of ownership of such accounts be made by the owner, obviously such transfer occurs in the state of that owner's domicile, and is subject to the laws of that state. These transfers from Mrs. Colton to her brother and cousin therefore were subject to the operation of the taxing statutes of this state. This is not controverted by appellants. The question is, were these transfers of the kind and character made taxable by the provisions of our statute.
The transfers in question took place by means of the creation and operation of trusts; not as direct gifts in praesenti. This was the determination in the chancery suit aforesaid; it is not controverted in these tax proceedings; there is no *Page 99 
evidence which would justify or support a finding by the commissioner or by this court that the transfers of ownership were effectuated by direct gifts in praesenti; the evidence necessitates the reverse of such a finding.
Obviously, — since no direct completed gifts were made, — if no valid trusts were created the result would be that no transfers of these accounts to the decedent's brother and cousin ever took place. Transfer of the accounts would take place under her will and be taxable, but taxable as transfers to the testamentary beneficiaries, not as transfers to the brother and cousin.
The state is of course not bound in this proceeding by the result in the chancery suit to which it was in nowise a party.Cf. In re Dorrance, 115 N.J. Eq. 268, at page 272,170 Atl. Rep. 601; affirmed, 13 N.J. Mis. R. 168, 176 Atl. Rep. 902; In reFischer, 118 N.J. Eq. 599, at 605, 180 Atl. Rep. 633;Freudenreich v. Mayor, c., Fairview, 114 N.J. Law 290,176 Atl. Rep. 162.
It would therefore have been open to the commissioner in this tax proceeding, to find, — if the evidence before him so indicated, — that no valid trusts had been created. He made no such finding however, and makes no such contention on this appeal; he concedes that valid trusts were created; and the evidence in the record leads to the same conclusion.
What was the nature and operation of the trusts created? The answer to this question depends somewhat on whether the law of this state or the law of New York controls. It was held in the chancery suit that the law of New York controls. The correctness of this holding seems at least open to doubt, inasmuch as the appellate courts both in New Jersey and New York have affirmed the principle that the situs of a trust of personalty createdinter vivos is in the state of the domicile of the donor and the law of that state determines the validity of the trust.Swetland v. Swetland, 105 N.J. Eq. 608, 149 Atl. Rep. 50;affirmed 107 N.J. Eq. 504, 153 Atl. Rep. 907; Second Nat'l Bankof Paterson v. Curie, 116 N.J. Eq. 101, 172 Atl. Rep. 560;Morris v. Sheehan, 184 N.Y. Supp. 121, affirmed,191 N.Y. Supp. 939; affirmed 234 N.Y. 366; *Page 100 Maynard v. Farmers Loan Trust Co., 203 N.Y. Supp. 83;affirmed 238 N.Y. 592. Mrs. Colton, as already stated, was domiciled in New Jersey.
However, insofar as the issue now before this court is concerned, the result will be the same in either case.
Under the law of New York a deposit by one person of his own money to the credit of himself as trustee for another, without more, establishes the presumption of the creation of a trust; but that trust, so presumed upon that evidence alone, is a tentative trust, revocable at will until the depositor dies or until he makes it irrevocable by some unequivocal act or declaration in his life time, but if the depositor dies without having made the trust irrevocable and without having revoked the trust, it is presumed that an absolute trust was created, as to the balance on hand, at the death of the depositor. In re Totten, 179 N.Y. 112.
Under the law of New York, then, the first three deposits in the instant case (since there is no evidence to rebut the presumption arising from the form of the deposit) created revocable trusts. The fourth deposit, being simply to the credit of Mrs. Colton, not "in trust" for any one, does not come within the operation of this New York rule; but the vice-chancellor found from other evidence, — and the evidence before this court in the present case results in the same conclusion, — that Mrs. Colton had intended to, and had in fact, created a trust in this account in favor of Maria Hasbrouck, similar to the trusts in the other three accounts. All four trusts were therefore of the same nature; all four were revocable, at the time they were created. Those trusts were never revoked. Either they were revocable and so remained until Mrs. Colton's death or they became irrevocable prior to her death.
If they remained revocable up until the death of Mrs. Colton, absolute trusts as to the balances on hand were "created at the death of the depositor." This language, in the statement by the New York court as to what occurs in such cases when governed by New York law, would seem to indicate that the transfer of interest to the beneficiaries took place at the *Page 101 
death of Mrs. Colton, since the absolute trusts in favor of the beneficiaries are "created" at that time. If that be so then, of course, those transfers come within the category made taxable under the provisions of our statute.
However, even if the interests of the beneficiaries be deemed not to arise at the death of the depositor, but to have arisen at the time of the deposit and simply to have become absolute at the depositor's death, the transfers are just as taxable. The transfers of interest which occur at the donor's death, as to trusts which are revocable by donor but which were not in fact ever revoked, are taxable under our statute and taxable on the basis of the full value of the property involved. In re Fosdick,102 N.J. Eq. 45, 139 Atl. Rep. 318; Plainfield Trust Co. v.McCutcheon, 8 N.J. Mis. R. 593, 151 Atl. Rep. 279; affirmed108 N.J. Law 201, 154 Atl. Rep. 629.
Next we must consider the alternative that the trusts were not revocable or did not remain revocable down to the death of Mrs. Colton. The vice-chancellor found in fact, (p. 37) that inaddition to the evidence by the making of the deposits in the form aforesaid, Mrs. Colton "by unequivocal acts and declarations clearly manifested that she thereby intended to create trusts" for Mr. Holt and Mrs. Hasbrouck. The natural inference is that the vice-chancellor meant by this that Mrs. Colton's "unequivocal acts and declarations" were such as to complete and make irrevocable the trusts which otherwise would have been merely revocable. And this is corroborated by his later language (p. 41) wherein he states his finding to be that the trusts created presently vested interests to be enjoyed in future. Assuming, then, that the trusts were made irrevocable by the acts and declarations of Mrs. Colton, shortly after the time the deposits were made and prior to her death, — the transfers effectuated by these trusts are nevertheless taxable under our statute, because the interests though presently created are not "to take effect in possession or enjoyment until at or after the death of the donor."
That the trusts in question were of this character, — not to be enjoyed until Mrs. Colton's death, — is quite apparent *Page 102 
from the evidence before the commissioner; and this was also the finding in fact of the vice-chancellor (p. 41) where he says that the trusts here sub judice are the same as those sustained in certain cited cases, — all of which involved trusts, presently created and vesting, of interests to be enjoyed at the donor's death.
Where the enjoyment or possession of the property transferred is withheld from the beneficiary until the death of the donor, the transfer is taxable, — irrespective of whether or not income is reserved to the donor. Plainfield Trust Co. v. McCutcheon,supra; Koch v. McCutcheon, 111 N.J. Law 154,167 Atl. Rep. 752.
The same result is reached, if the trusts are deemed to be controlled by the law of New Jersey. True, under the law of this state, no trust of any kind whatever is established by, or presumed from, the mere opening of an account of the kind mentioned, without more. Nicklas v. Parker, 69 N.J. Eq. 743,61 Atl. Rep. 267; affirmed 71 N.J. Eq. 777, 71 Atl. Rep. 1135;Johnson v. Savings Investment Trust Co., 107 N.J. Eq. 547,153 Atl. Rep. 382; affirmed 110 N.J. Eq. 466, 160 Atl. Rep. 371;Thatcher v. Trenton Trust Co., 119 N.J. Eq. 408,182 Atl. Rep. 912. But the vice-chancellor found, and the evidence before the commissioner also shows, that there were acts and declarations by Mrs. Colton, beyond the mere opening of the accounts, sufficiently proving that Mrs. Colton did create trusts; and the commissioner concedes that she created valid trusts.
That being so, the question as to whether these trusts were revocable or irrevocable prior to Mrs. Colton's death, and the question as to the beneficial interests being effective in possession and enjoyment only at the death of Mrs. Colton, are the same whether the law of New Jersey or the law of New York controls. Of course under the law of New Jersey, the trusts would comprise all the moneys deposited in the account and not merely the balances remaining at death; but this is immaterial on the present issue, because the commissioner has taxed only on the basis of the balances at death and the appellants (naturally) have not contended that this was erroneous. *Page 103 
Finally, even if it should be assumed that the beneficial interests in these trusts took effect prior to the death of Mrs. Colton, — at the time she gave to the beneficiaries notice of the trusts, or even at the time of the creation of the trusts, — the transfers thereby effectuated were and are taxable under the provisions of our statute as transfers made in contemplation of death.
True it is, that the commissioner did not assess the tax on this ground; but the tax of course must be affirmed if it appear that the transfers are taxable under the provisions of our statute, — whether or not they be taxable under the particular provisions which the commissioner believed to be applicable.
That these transfers, made by the creation of these trusts, were made in contemplation of death seems beyond question from the evidence. They were made at the end of 1929 and beginning of 1930, when Mrs. Colton was in the neighborhood of seventy years of age, and only slightly more than two years prior to her death, — indeed the last one was made less than two years prior to her death. For many years she had supported or contributed to the support of these two beneficiaries. She had made a will in which she had included no provision for either of them. Her brother Philetus, one of the executors of the will, urged her to make provision for them in her will. Rather than make any change in her will she opened these accounts, — and specifically so stated. Obviously, then, they were made in lieu and stead of testamentary dispositions, — in contemplation of death, — and are taxable under our statute. In re Schweinler, 117 N.J. Eq. 67, 175Atl. Rep. 71; affirmed, 13 N.J. Mis. R. 722, 180 Atl. Rep. 774.
Under any and every aspect, therefore, the assessment of tax must be affirmed. *Page 104