Henry P. Kraft, a resident of this state, owned three hundred and sixty-five shares of stock of A. Schrader Son, and four lots of land at Long Beach, New York. His wife owned three hundred and fifty shares of the same stock. On May 26th, 1924, they formed a corporation, known as Kraft's Corporation, conveyed the stock and lots to the corporation, *Page 544 
and issued fifty-one shares (of a total of one hundred shares) of the Kraft Corporation stock to Henry P. Kraft and forty-nine to his wife; and on the same day he transferred his fifty-one shares to himself, as trustee, under a trust agreement, and she transferred her forty-nine shares to herself, as trustee, under another trust agreement.
On the date in question Henry P. Kraft was about fifty-six years old, and had been ill for a month with pernicious anaemia, and had been so advised. It was felt that he might not recover. It is a matter of common knowledge that that disease almost always results fatally, and that its course is rapid. He died less than three months later — August 12th, 1924.
By the terms of the trust agreement under which decedent transferred his stock, the income was to be paid to the wife for life, at her death to their children then surviving, for their lives, the corpus to go to the childrens' issue or the persons designated by their wills, or if none of the children, nor any issue of them, survived the wife, the corpus was to revert to Mr. Kraft.
By the terms of the wife's trust agreement, the income from her stock was to be paid to the husband for life, and at his death to the children and their issue or testamentary beneficiaries, just as in the husband's agreement, and if no issue survived the husband the corpus reverted to the wife.
Decedent left a will, executed in 1921, under the terms of which he gave his estate to the same beneficiaries — his wife and their three children, and the issue of any child. Roughly speaking it was to go in equal shares among the four, $25,000 outright to each, and the balance, including in any event all his Schrader company stock, in trust for their respective lives.
The comptroller assessed the market value of the property (Kraft company stock) transferred by the husband in trust, at $1,342,609.68, and the value of the estate passing under the will at $425,003.98 — a gross total of $1,767,613.66, with deduction of $33,213 debts and expenses. He assessed the tax on the combined value of the property transferred under the agreement and the property passing under the will, and *Page 545 
charged interest from the expiration of a year after testator's death.
The decedent's executors appeal from the comptroller's assessment and levy on three grounds. They contend (1) that the transfer of the property placed in trust by decedent was not taxable; (2) that if taxable, it should be taxed as a separate unit and not in combination with the property passing under the will; (3) that interest on the tax should not have been charged.
Passing the first contention, for the moment — the second contention of appellants is concededly determined against them byKunhardt v. Bugbee, 3 N.J. Mis. R. 1107; affirmed in reargument, 4 N.J. Mis. R. 692.
Appellants' third contention seems sound. Decedent died August 12th, 1924. The comptroller added to the tax, interest from August 12th, 1925, at six per cent. The tax was not assessed and levied until February 2d 1926; payment was made promptly February 20th, 1926. Admittedly the delay in assessing and levying the tax was in nowise attributable to the executors (who arranged for appraisement two weeks after decedent's death). In such a case interest is not to be imposed. Bugbee v. Tatum,131 Atl. Rep. 289; affirmed, 4 N.J. Mis. R. 858; affirmed,103 N.J. Law 600.
In the present case there was no fault on the part of the comptroller's department, and in that respect it differs from theTatum Case. Respondent contends that this difference is material, but such contention derives no support from the language of either court in the Tatum Case. The test is not whether there was or was not negligence or fault by the comptroller's department, but whether or not the delay in payment of the tax was, as between the comptroller and the estate, attributable to the latter.
Respondent argues that such a view nullifies section 6 of the statute. No so; that section applies where there is delay on the part of the estate, but where such delay is not due to negligence or willful default. In the present case there was no delay on the part of the estate, and no interest should have been charged. *Page 546 
Turning now to the first, and main, ground of appeal — it is contended that there was an adequate, valuable consideration for the transfer by trust deed, and that hence such transfer was not taxable, even though it was made (and appellants concede that it was) in contemplation of death.
The statute (P.L. 1909 ch. 228, as amended), under section 1, paragraph 3, imposes a tax —
"When the transfer is of property made by a resident, * * * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death. Every transfer by deed, grant, bargain, sale or gift, made within two years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate, valuable consideration, shall, in the absence of proof to the contrary, be deemed to have been made in contemplation of death within the meaning of this section."
The broad purpose of the legislation is to tax successions at death. Originally the statutory tax was imposed only upon testate and intestate successions. When it was found that the object of the act could be, and was being, defeated by transfers prior to death but in the nature of testamentary dispositions, the statute was amended so as to tax such transfers also. This was the purpose of the first sentence of the paragraph of the statute quoted above.
The language of that sentence is broad enough to include transfers made in exchange for consideration of equal value received by the transferor. From the history and purpose of the legislation, however, it is obvious that it was not intended to tax transfers of that kind, even though they were made in contemplation of death or intended to take effect at death. A man believing his death reasonably imminent might well desire to set his affairs in the best shape possible, and sell his business or his real estate, or the remainder interest in his real estate (reserving it to himself until his death), and be able thus to realize better prices than could be obtained by his executors after his death. The result of such sales, at full value, would in nowise defeat the statutory purpose; the estate would not be depleted, but merely changed in form. *Page 547 
Obviously the legislature did not intend that such transfers should be taxed. Cf. In re Huggins, 96 N.J. Eq. 275 (at p.282).
On the other hand, the existence of mere technical consideration for the transfer would not be sufficient to avoid taxability. In re Hall, 94 N.J. Eq. 398 (at p. 404); In reHuggins, supra. If A., contemplating his imminently approaching death, transfers most of his estate worth a million dollars to his only son in exchange for a transfer by the son to his father of some shares of stock worth $500, there may be technical legal consideration, but that cannot save the transaction from being essentially not a bona fide sale, but a transfer in lieu of a testimentary disposition — a gift in contemplation of death of the value of the property transferred in excess of the value of the property received. There is no rational basis for endeavoring to read into the statute an implied exception from taxation in such an instance.
The transfer in the instant case being concededly made in contemplation of death, the burden of proof was on the executors to bring the case within the implied exception to the statute, or to prove that some additional exception is to be implied and bring the case within that.
They contend (in effect) that as the result of the legislative addition of the second sentence in the paragraph of the statute above quoted (which sentence was added by the amendment (P.L.1922 ch. 174), the meaning and intent of the first sentence is altered by implication, and is to be interpreted as saying that a transfer in contemplation of death is not to be taxed unless it appear that there was not an adequate, valuable consideration. With this contention I cannot agree. Under the wording of this second sentence, it purports to do not more than establish a presumption (and a burden of proof), that under certain circumstances a transfer was made in contemplation of death. There is no necessary, nor even probable, inference that its meaning and intent is to do anything more than what it says.
The appellants, however, further contend that — aside from the alleged implication from this second sentence — (1) a *Page 548 
transfer is not taxable if there be an adequate, valuable consideration; (2) that such adequate, valuable consideration need not be received by the transferor; (3) that there will be a sufficiently adequate, valuable consideration for the transfer if there be a surrender of valuable rights by the transferee, or by a third party, or a transfer by the transferee to a third party, or a consideration of marriage, or of personal services and the like; (4) that there was in the instant case both a transfer by the wife to the husband of practically equal value to the life estate transferred to her by the husband, and a surrender of valuable rights by the wife — namely a giving up of her ownership and control of her three hundred and fifty shares of stock, and a transfer by her of the remainder interest in her stock to the children on the death of the husband; (5) that these transfers and surrenders by the wife constitute an adequate, valuable consideration sufficient to make the husband's transfer non-taxable; (6) that the test is whether or not decree could be obtained for specific performance of the agreement.
In support of contentions 2, 3 and 6, appellants cite authorities from other states. Nevertheless, that these contentions are utterly unsound is quite clear if there be kept in mind the fact that under the language of our statute all
transfers made in contemplation of death are taxable — that it is only by implication that transfers for adequate, valuable consideration are held not taxable, and that the sole reason for such implication and such determination is that by such transfers the estate of the transferor who is about to die isnot depleted. Obviously, then, it is only when the adequate valuable consideration of substantially equal value to the property transferred is received by the transferor, that the transfer in contemplation of death is not taxable.
Consider for instance — if A., about to die, transfers shares of stock in X. Company worth $500,000 to B., in consideration of B.'s promise to transfer to A.'s children at A.'s death, shares of stock in Y. Company, of substantially equal value, or in consideration of an actual contemporaneous transfer by B. to A.'s children. In the one case there would be a surrender *Page 549 
of valuable rights by B., and A.'s children could doubtless get decree for specific performance by B.; in the other case there would be an actual transfer by B. of equal value to A.'s transfer. In both cases, however, A.'s estate is depleted; in both cases the transaction in substance (and it has repeatedly been held that it is the substance, and not the form, of the transaction which governs), amounts to a gift, in lieu of gift by will, to A.'s children, which is the very thing that the amendment to the statute intends to tax.
Tested by the same standard or principle it would seem that transfers in contemplation of death or in consideration of marriage or of personal services would also be taxable, at least to the extent of the value of the transfer over and above the actual financial value by which the transferor's estate was benefited by the marriage or the personal services. This, however, need not here be decided.
That which, in substance, actually was done by the transaction in the instant case was this: The husband gave to his wife a life estate (for her life) in his three hundred and sixty-five shares of Schrader company stock and four lots of land (which had been put into the form of fifty-one shares of Kraft company stock), and gave the remainder interest therein (after her life estate) to his children. The wife gave to the husband a life estate (for his life) in her three hundred and fifty shares of Schrader stock, and gave the remainder interest (after his death) to the children.
This was done, concededly, in contemplation of his death, and, from the facts, in contemplation of his imminently approaching death, to occur in all probability within a few months, as in fact it did. Obviously it was not a bona fide sale; it was a transfer in lieu of testamentary disposition. The transferees were his wife and children — the persons whom he would naturally make his testamentary beneficiaries, and the persons who in fact are the beneficiaries under his will. The wife's "surrender of rights," so urgently argued by appellants, is more technical than practical. She received a life estate of somewhat greater value than the one she transferred; she gave the remainder after her life estate, but gave *Page 550 
it to her children, to whom she would naturally give it by her will at her death anyway; and she received the benefit, for her life estate, and the children's remainders, of the permanent combination of her stock and her husband's stock and the alliance with the holders of other Schrader stock constituting altogether a two-thirds majority of that stock.
But irrespective of these latter considerations, he transferred the life estate and the remainder, in contemplation of death, and depleted his estate thereby, to the extent of the total value thereof, less what financial benefit his estate received in exchange.
For the remainder interest, he received nothing of any financial benefit to his estate, so that the transfer of that remainder interest is clearly taxable; it cannot be deemed to come within the implied exception to the statute.
For the estate for the wife's life he received from her an estate for his life in a somewhat smaller corpus. If the two principal sums owned by himself and his wife had been of equal value, and if his expectancy of life had been equal to her expectancy of life, his transfer of the life estate would not have been taxable, for he would have received back something of financial value equal to that which he transferred.
In fact, however, the wife, so far as appears, was in normal health and had a normal expectancy of life, while he was at death's door, and, hence, his expectancy of life was far below normal — was almost nil — and these facts were known to both of them in all probability; there is nothing to indicate the contrary. Hence, the exchange was not equal; that which he transferred was of far greater value than that which he received. The transfer of the life estate was therefore also taxable — at least to the extent that the value of the life estate transferred exceeded the value of the life estate received.
It does not appear from the record whether, in appraising the value of the life estate transferred, the value of the life estate received was deducted or not, but the value of the life estate received would be small, and the difference in tax would be so small as to be of little moment. Moreover the computation is not challenged by the appeal. The issue is not raised, *Page 551 
and the proofs are not before the court, so that this point can receive no consideration.
The appellants strongly urge that the transfer of the life estate is not taxable, because of section 15 of the statute, to wit:
"Im determining the value of a life estate, annuity or estate for a term of years, the American Experience Table of Mortality, with interest at the rate of five per centum per annum shall be used."
They say that in view of this section the decedent's expectancy of life must be taken as normal, and the value of the life estate received by him must be deemed substantially equal to the value of the life estate transferred by him.
This argument must be rejected for three reasons —
First. There is nothing in the record to show Mrs. Kraft's age; nothing to show that the normal expectancies of life of the two persons were substantially the same.
Second. A reading of the entire statute (Cf. § 3 thereof) shows that this section 14 was intended simply as a direction to the comptroller in appraising life estates and terms for years created by instruments of transfers.
Third. The statute does not say, nor does it necessarily imply, that the table shall be used without regard to the actual condition of health of the person whose life is under consideration.
The tax will be affirmed, except as to the charge of interest. *Page 552