The executor of Archibald D. Russell, deceased, late of Princeton, New Jersey, appeals from the assessment and levy of transfer inheritance tax made by the comptroller in respect to the estate of said decedent, and raises two issues.
Testator, about a year and a half before his death, conveyed his residence, "Edgerstoune," with its furnishings and other personalty therein contained, to his four children, by deed dated May 15th, 1918. The comptroller determined *Page 579 
that this was a transfer intended to take effect in possession or enjoyment at or after the death of the transferor, and assessed the taxes under the statute accordingly. Appellant contends that this was error.
A federal estate tax of over $1,000,000 was assessed against and paid by decedent's estate. About one-half of decedent's total estate was composed of real estate situate in New York, the transfer of which was of course not taxable by New Jersey, under our statute. In determining the value of the property, the transfer whereof was taxable in this state, the comptroller refused to allow deduction of the full amount of the federal estate tax — disallowing deduction of such portion thereof as was proportionate to the ratio between the New York real estate and the total estate. Appellant contends that this was error.
Considering first, the transfer of the residence and contents —
That which is to be determined is, of course, as appellant's proctor concedes, the substance of the entire transaction — not the mere effect of the deed of conveyance, standing alone, if there be other factors entering into the transaction.
The deed bears the typewritten date May 15th, 1918. It was drawn by, executed in the presence of, and acknowledged before, the late Bayard Stockton — well known as a careful practitioner. The date of the acknowledgment is June 22d 1918 — in Mr. Stockton's handwriting. The deed was recorded by Mr. Stockton on June 25th, 1918. There is no other evidence as to the date of its actual execution and delivery. Assuredly the inference is justifiable that it was executed and delivered June 22d 1918, and not before.
The four children executed a lease back to their father. The lease bears typewritten date May 16th, 1918. There is no other evidence as to the date of its execution — which was presumably therefore on that date. It is a justifiable inference therefore that the lease was executed and delivered prior to the deed; and, hence, that decedent intended them both as a part of the one transaction — that the execution of the deed was conditioned upon the execution of the lease. *Page 580 
The lease is for a rent of one dollar a year. Admittedly it was executed by all four children, yet the oldest one — the only one who testified — did not remember anything about executing any such paper. The inference is justifiable that the reason it made no impression on her mind — or the others, for they were not called to testify — was that it was of no importance to them; they simply signed a paper at their father's request. The same daughter testified that at the time her father told her he was going to deed the place to the children he said he knew his children all would be willing to have an amicable "arrangement" about his staying at the residence.
The reason put forward as to the motive for the gift is that Mr. Russell had lost interest in the place after his wife's death a year or so before, and preferred the seashore as a residence, and wanted to relieve himself of the responsibility of keeping up the large establishment and turn that burden over to the children. Yet the evidence is uncontroverted and unexplained that after the deed he continued to live at the place and to run it, maintain it, and pay the expenses just as he had before — although his son, aged twenty-nine, and his two unmarried daughters lived there too, and had large means of their own.
If the lease back had been for the period of the grantor's life, instead of for a term of years, the inevitable conclusion from the evidence would be that the deed and lease were all a part of one transaction by which the grantor intended to transfer the legal title but to retain himself the possession and enjoyment until his death. Does the fact that the lease back was for a term of ten years prevent such a conclusion? Under the circumstances of the case it would seem not.
The substance of the whole transaction was — at least such a conclusion is entirely justified by the evidence — that the grantor conveyed the property to his children, reserving to himself the possession and enjoyment thereof, rent-free, for a period of ten years.
The grantor was within a few days of sixty-five years of *Page 581 
age at the time. If in average health his expectancy of life would have been admittedly a trifle over eleven years. But he died in a year and a half — of diabetes. It is a matter of common knowledge that diabetes is a progressive disease — at that time (which was prior to the development of the insulin treatment) usually fatal eventually. The daughter testifying as to the year 1918 said she did not think he seemed very ill; that she did not know how long he suffered before his death; that he was not on a strict diet, c. There is contrary evidence it is true, but bearing in mind that the daughter's interest was adverse to that of the state, the inference is justifiable, from these admissions, and from the nature of the disease which caused his death so soon afterwards, that the grantor was ill in 1918 with diabetes, and that some kind of a diet had been prescribed, even if not strict, or even if he did not adhere to it.
There would seem to be sufficient evidence to support the conclusion that at the time of the gift the grantor was not in average health but much below it, and that he knew it, and, hence, that he contemplated that a term of ten years would in all probability be longer than the period of his remaining years of life.
Since there is evidence to support the several inferences and conclusions mentioned, it is concluded that the appellant has failed to establish that the comptroller erred therein. The presumption is in favor of the determination below — the burden is on the appellant.
Adopting these conclusions as valid, therefore, there remains but a single legal question, to wit: Where a man makes a substantial transfer, by gift, reserving to himself the beneficial possession and enjoyment of such property for a term of years which he thinks will probably be longer than his remaining life, is such transfer taxable under our statute?
The statute makes such a transfer subject to tax, if the gift was intended to take effect in possession or enjoyment at orafter the transferor's death. It seems beyond argument that a donor who reserves to himself the entire beneficial *Page 582 
possession and enjoyment of the property given, for a definite term of years, expecting that he will die before the expiration of that term, intends the gift to take effect in possession and enjoyment at or after his death. It is concluded therefore that such gift is taxable, and the tax in question on this ground of appeal will be affirmed.
It may be added, that examination of the several cases relied on by appellant discloses an utter failure of those cases to support its argument. In Re Dolan's Estate, 279 Pa. St. 582, a tax was imposed, under a statute passed in 1919, in respect to a trust created in 1908 (eleven years before the passage of the act). Nothing was reserved to the grantor, except a right of revocation, which was never exercised. The orphans court set aside the tax and the supreme court affirmed this ruling, on the ground that the reservation of the right of revocation did not make the transfer one intended to take effect at or after the grantor's death. In Shukert v. Allen, 273 U.S. 545, a grantor had created a trust whereof the income was to be accumulated, and neither income nor principal paid over to the beneficiaries until thirty years from the date of the trust. The grantor expected to live not more than fifteen or twenty years. The district court (300 Fed. Rep. 754) upheld the tax on the ground that thirty years was a time intended to be at or after the grantor's death. The supreme court in no wise controverted that reasoning, but set aside the tax, because nothing whatever had been reserved to the grantor's own use or enjoyment. In Nichols v. Coolidge,274 U.S. 531, the facts were much like the case at bar, but with two very important differences — (1) the deed had been made in 1917, two years before the enactment of the federal statute in 1919, and (2) the lease back by the children was for one year, with provisions for renewal, but "always subject to the right in the lessors" (the children) "to terminate the term in any year." Although "the parties contemplated that the premises would be enjoyed by decedent and her husband as long as they might desire," * * * the decedent had no valid agreement *Page 583 
to that effect." In the case at bar the deceased did have a valid agreement giving him the possession and enjoyment for a time expected and intended to continue until after his death.
Turning now to the second ground of appeal: It seems clear that the determination in the case of In re Roebling's Estate,89 N.J. Eq. 163; affirmed sub nom., Bugbee v. Roebling,94 N.J. Law 438, is dispositive of the issue raised in the case at bar. Appellant says that the point now sub judice was decided in theRoebling Case. This is not strictly correct — for the RoeblingCase involved the federal tax under the act of 1916, while the present case deals with the federal tax under the act of 1918; moreover, in the Roebling Case the point was not raised as to the validity of a proportionate division of the federal tax deduction.
It was held, however, by the court of errors and appeals as well as by this court, in the Roebling Case, that the federal estate tax was to be deducted in computing the value of the property "transferred" for the purpose of ascertaining the tax under the New Jersey statute, for the reason that the federal tax was a tax on the transfer of property from the decedent, while the New Jersey tax was a tax on the transfer to the executor, administrator or beneficiary; that "the property comes to the executor or administrator already burdened with the federal (tax) lien." The federal tax under the act of 1918 is precisely the same kind of tax as under the act of 1916; the amendment of 1922, to the New Jersey statute (providing for proportionate allowance or deduction, only), had not been enacted at Mr. Russell's death, and hence the determination here must be the same as in the Roebling Case.
Since the succession to the decedent's property is burdened with the federal estate tax, it must be burdened with the whole of such tax.
Moreover, the federal statute makes the executor or administrator personally liable for the whole of the federal tax. Since he is so liable, and suable, for the whole of this *Page 584 
tax, he necessarily has the right to exonerate himself from such liability by payment of the entire tax, out of the estate in his hands, without waiting for suit. That which passes to the residuary legatee or distributees therefore is the estate thus diminished by the federal tax, and (in the absence of the subsequent provision in our statute making specific provision for only partial deduction), the New Jersey tax can be computed only on the basis of the estate so diminished.
It is argued on behalf of the state that such a result is inequitable in that it burdens the beneficiaries receiving the New Jersey property with the federal tax imposed on the transfer of the New York property in addition to the federal tax imposed on the transfer of the New Jersey property. If the result be inequitable, it cannot be helped by this court or by any other court. The remedy must come from congress, or — so far as computation of the New Jersey tax is concerned — from the legislature.
It may be noted that the effect of the 1922 amendment in this behalf makes the situation still more onerous than before, to a residuary legatee or distributees — for that amendment deals simply with the computation of the New Jersey transfer tax, and does not affect the distribution of the estate by the executor or administrator. By the 1922 amendment the amount of the New Jersey tax is increased and the residuary estate correspondingly decreased, as compared with the situation prior to 1922.
The inequity argued by the attorney-general, however, would seem more apparent than real. In the distant case the beneficiaries of the New York property and of the New Jersey property are practically identical. Moreover (except where a decedent dies without having had the time or opportunity so to do), the decedent may prevent the alleged inequity, if he so desires, by appropriate provision in his will.
On the second ground of appeal, then, the appellant is entitled to relief — and the record will be admitted to the comptroller with directions to reassess the tax, allowing the deduction of the entire federal tax. *Page 585