This appeal involves a construction of our inheritance tax statutes, especially SDC 57.2104(3).
Paul A. Risvold died on the 7th day of January, 1937, a resident of Minnehaha County, South Dakota. In April, 1934, it became necessary for the deceased to make a loan upon real estate then owned by him. Risvold at the time was seventy-one years of age, and the lender required that some younger person or persons sign the notes representing such loan. This loan was to be in the amount of $22,500, and secured by land in Minnehaha County. To meet the *Page 554 
requirements of the lender, Iver N. Aspaas, and his son, Nils I. Aspaas, who were indirectly related to Risvold, and who were also neighbors and friends of long standing, signed these notes when the loan was made. Iver and Nils Aspaas testified that, when Mr. Risvold asked them to sign this note, he told them they would not lose anything. The evidence discloses that, subsequent to this conversation, the three men went to the bank at Baltic and there a Mr. Hegness, in the presence of Mr. Risvold, stated "that, if Iver Aspaas and his son, Nels, would sign the notes, the property would all go to them when Mr. Risvold passed away." Mr. Hegness further testified that Mr. Risvold had first asked him to sign these notes and had said: "Of course, when I am gone, the property will be turned over to you," but Mr. Hegness declined because Mr. Risvold had many relatives in the community who were able to act. Iver and Nils Aspaas thereafter signed the notes as requested. About a year after these notes were signed, and after the death of the wife of Mr. Risvold, he appeared at the Baltic bank and there stated to the assistant cashier that when Iver and Nils Aspaas signed these notes it was the understanding that they should have his property upon his death, and requested that the proper transfers be made. Thereafter deeds to all the real estate belonging to Mr. Risvold were prepared, together with a bill of sale of all his personal property, and after the execution of these papers, they were left with the Baltic bank to be delivered to Iver and Nils Aspaas, the grantees named in these instruments, upon Risvold's death. Mr. Risvold died about two years after the execution and delivery of these instruments, and the bank thereafter delivered the deeds and bill of sale to Iver and Nils Aspaas, who thereupon became the owners of the properties therein described. The trial court held that this property was transferred to Iver and Nils Aspaas upon "a full, adequate, and sufficient consideration," and was therefor not subject to an inheritance tax under the statutes of this state. The real and personal property, which Iver and Nils Aspaas received upon the death of Risvold, was of the value of $36,925.50, and was charged with the mortgage and accrued *Page 555 
interest in the amount of $22,612.50, claims filed against the estate of Risvold in the amount of $1,802.17, and taxes in the sum of $380.57, leaving a total net value of $12,130.26.
The state rests its right to collect a tax upon the transfer of property above outlined on SDC 57.2104(3), which provides:
"A tax shall be imposed upon any transfer of property, real, personal, or mixed, or any interest therein or income therefrom, in trust or otherwise, to any person, association, or corporation except a county, township, or municipal corporation, within the state, for strictly county, township, or municipal purposes, in the following cases: * * *
"(3) When the transfer is of property made by a resident * * * by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."
[1] Clearly, this was a transfer of property "intended to take effect in possession or enjoyment" only after the death of Mr. Risvold. We need not, therefore, consider whether it was a transfer of property made in contemplation of death within the meaning of the statute, because whether it was or was not made in contemplation of death, it was a transfer intended to take effect in possession or enjoyment only after Risvold's death, and, as such, comes within the meaning of the statute.
It should be noted that the statute is broad enough to include all property transferred in contemplation of death, even if transferred with adequate consideration. Many states have statutes of similar import, and the question of whether such statutes include transfers of property made with an adequate consideration has been before the courts of many states. See Annotations 7 A.L.R. 1028, and 99 A.L.R. 949. Montana and several other states have squarely held that "where the transfer of property is not to take effect in possession or enjoyment until after the death of the transferor, whether in contemplation of death or not, it is subject to the tax" and the question of consideration is immaterial. In re Estate of Oppenheimer,75 Mont. 186, *Page 556 243 P. 589, 592, 44 A.L.R. 1470. However, the majority of courts appear to have taken a view opposed to that set up in the Montana decision. The Arizona court in Re Hubbs, 41 Ariz. 466,19 P.2d 672, 674, stated the majority rule as follows:
"The purpose of the statute was not to impose an inheritance tax upon transfers of property made in the ordinary course of business and for an adequate, valuable consideration, but upon those made by deed, grant, bargain, sale or gift, when these instruments are intended to and do accomplish what a will would have brought about, that is, pass property to another `to take effect in possession or enjoyment after the death of the grantor.' In re Wadsworth's Estate, 100 Misc. 439, 166 N.Y.S. 716; In re Thompson's Estate, 196 Iowa 721, 195 N.W. 250; In re Reynolds' Estate, 169 Cal. 600, 147 P. 268, 269; Hagerty v. State ex rel. Dyer, 55 Ohio St. 613, 45 N.E. 1046, 1047; In re Wheeler's Estate, 119 Neb. (Stoddart) 344, 228 N.W. 861; In re Kraft's Estate (N.J. Prerog.) 103 N.J. Eq. 543, 143 A. 764; Blair v. Herold (C.C.) 150 F. 199; Herold v. Blair [3 Cir.] 158 F. 804; In re Orvis' Estate, 223 N.Y. 1, 119 N.E. 88, 89, 3 A.L.R. 1636. The word `deed,' as used in this paragraph, means a conveyance intended as a gift and does not refer to such an instrument if made in the ordinary course of business for a valuable consideration, In re Wadsworth's Estate, supra, and the word `sale', whose meaning in this connection is to be determined by the application of the maxim, `"Noscitur a sociis," * * * includes only transactions which, though in form sales, are in fact gifts.' Hagerty v. State ex rel. Dyer, supra. In re Orvis' Estate, supra, the Court of Appeals uses this language:
"`The Legislature did not intend that a purchaser who had paid full value for the property transferred should directly or indirectly pay the tax besides. * * * The statute was not intended to restrict or burden the right of persons to transfer property in all legitimate ways and for all the usual and manifold purposes and objects of trade, commerce, and purchase, or of voluntary transfers or gifts not made in contemplation of the death of the transferor or intended to *Page 557 
take effect in possession or enjoyment after such death. It was intended to tax all transfers which are accomplished by will, the intestate laws of this state, and those made or incepted prior to the death of the transferor in contemplation of or intended to take effect in possession or enjoyment after his death which are in their nature and character instruments or sources of bounty or benefaction and which can be classed as similar in nature and effect with transfers by wills or the intestate laws, because they accomplish a transfer of property, donative in effect, under circumstances which impress on it the characteristics of a disposition made at the time of the transferor's death'."
[2] We think that our statute, when considered in the light of the objects and purposes of the entire Chapter 57.21, will support only that construction placed upon similar statutes by the majority of courts as announced in the Arizona decision, just quoted.
[3-5] We come now to the question of what should be deemed an adequate consideration under this statute and the construction placed thereon. This is a troublesome question and, as had been stated by several courts, must be determined by the facts presented in each particular case. It is not every technical legal consideration that will defeat the imposition of a tax. In re Kraft's Estate, 103 N.J. Eq. 543, 143 A. 764. We are further convinced that to defeat the tax on the ground that the transfer was based upon an adequate consideration, the evidence in support of such ground must be clear and convincing of every requisite to constitute an adequate consideration. Such is the requirement in proving a gift causa mortis and by analogy, we believe, the same rule should apply when it is attempted to remove from the effect of this statute a transfer of property to take effect in possession and enjoyment only after the death of the grantor. Matejka v. Reider, 62 S.D. 335, 252 N.W. 878; Medin v. Brookfield et al., 66 S.D. 209, 281 N.W. 97. The question therefore presented is whether the signing of these notes by Iver and Nils Aspaas, under the facts and circumstances disclosed by this record, is sufficient to remove this transfer from our statutes imposing a tax. *Page 558 
[6] Certainly all the circumstances surrounding this transaction disclosed by this record, deny most emphatically that the consideration, which is now claimed was the basis for this transfer, was ever definitely agreed upon. At the time of the original talk where this matter was discussed, the most that Mr. Hegness would say was "Well, I think I explained it to them; that if Iver Aspaas and his son, Nels, would sign the notes, the property would all go to them when Mr. Risvold passed away." The record is silent as to what property Mr. Hegness referred, whether it was simply the property involved in the mortgages or the personal and other property then owned by Mr. Risvold. On cross-examination Mr. Iver Aspaas, in answer to the following questions, testified, as follows:
"Q. And, as a matter of fact, you didn't know that Paul had given this property to you and Iver until after he died, did you? A. No.
* * *
"Q. And weren't you kind of surprised that you got in on it? Didn't you expect Nels to get it all, on account of his love for Nels? A. I wouldn't say, of course. I kind of thought I would get something.
"Q. But you kind of figured Nels would get most of it? A. Yes.
"Q. And did you have any talk with Paul from the time you signed the notes until the day of his death, as to what he had done about giving you the property? A. No.
* * *
"Q. Well, you would have signed that note for Risvold even though there hadn't been any talk about turning the property over to you, wouldn't you? A. I don't know, because he mentioned it.
"Q. Yes; but you would have signed the note anyway? A. Probably."
Mr. Nils Aspaas, after testifying on direct examination that he did not know until after Mr. Risvold was dead that this property had been transferred to him, testified on cross-examination as follows: *Page 559 
"Q. From that time on, after the meeting there at the bank, which was sometime before the papers were signed, up to the time of Risvold's death, was there any other conversation of any kind between you and Mr. Risvold as to what disposition he had made or was going to make of his property? A. No.
"Q. And when you signed these papers it was your understanding that in the event that Mr. Risvold should die you were to get the property covered by the mortgages which you signed? That right? A. Well I do not know that that was the understanding. I understood it that the property if it was sold would liquify the loan.
"Q. Well Nels was anything said there about you getting the personal property and the land in Meade County and the land in Brown County and in North Dakota, at this meeting there at the bank? A. Well just that we would get his property, it was his property.
"Q. All of his property or just the property covered by the mortgage? A. It would be the property covered by the mortgage.
"Q. It was your understanding that you were to have the property covered by the mortgage if you signed these papers and enabled him to get this loan? A. Mr. Hegness said that if Mr. Risvold died the property would be ours.
"Q. What property did he refer to? A. Now I cannot tell you exactly what property it was so much property there but no certain land was stipulated or personal property."
The whole record discloses that this was not a matter of pure business. Mr. Risvold had no direct descendants and it was not until after the death of Mr. Risvold's wife, about a year after the transaction involved, that he made the transfer of this property by executing and delivering the deeds and the bill of sale to the bank. Although the deceased was an old man, no one ever requested that the transfers be made. Certainly, neither Iver nor Nils had any belief that, immediately upon signing the notes, they were entitled to a transfer of all of the property of Risvold with the possession and enjoyment thereof to take effect upon his *Page 560 
death. While it might be that the record discloses that these men were justified in believing, following this transaction, that they would be the recipients of a bounty bestowed by Mr. Risvold upon his death, nevertheless no other conclusion can be reached than that the nature and extent of that bounty was left to the discretion of Mr. Risvold.
The facts therefore, in our opinion, disclose no such consideration for this transfer as to take it outside the meaning and scope of this statute. No costs to be taxed.
The judgment appealed from is reversed.
All the Judges concur.