The executors of the will of Frederick C. Squier, Sr., have filed a petition in which they allege their dissatisfaction with the assessment of a transfer inheritance tax by the State Tax Commissioner on certain inter vivos transfers gratuitously made by the decedent. A brief precursory reference to the acknowledged facts will suffice to exhibit the controversial issues debated by counsel.
Frederick C. Squier, Sr., died testate, on August 29th, 1937, at the age of eighty years and ten months. He was for many years prior to his death a resident of Rahway, Union County, New Jersey. The estate alienated by testamentary disposition pursuant to a will executed on February 7th, 1935, was appraised by the Commissioner at $1,601,377.36. The total value attributed to theinter vivos transfers is $5,312,944.18. Accordingly, the net taxable estate of the decedent was valued by the Commissioner at $6,914,321.54.
The wife of the decedent, Minnie C. Squier, died on September 8th, 1938. The decedent's son, Frederick C. Squier, Jr., the latter's wife, Leora S. Squier, the decedent's daughter, Marjorie S. Searles, and her husband, Harold M. Searles, survive.
It is incidentally observed that the valuation or time of valuation of the transfers (Cf. Nicholas v. Martin,127 N.J. Law 35; 21 Atl. Rep. 2d 323; affirmed, sub nom. Rutgers v.Martin, 127 N.J. Law 603; 23 Atl. Rep. 2d 406), and also the apportionment of taxable interests arising under the last transfer are not disapproved by the appellants. In the prosecution of this appeal, the executors assert that the assessment of the tax on the two inter vivos transfers was unjustifiable and erroneous. A condensed exposition of the intervivos gifts may be composed as follows: *Page 265 
 TRANSFERS OF 1930
To Marjorie S. Searles
 Bonds ................................................ $728,276.70
 5,000 shares N.J. Zinc Co. ........................... 370,000.00
To Frederick C. Squier, Jr.
 Bonds ................................................ 728,276.70
 5,000 shares N.J. Zinc Co. ........................... 370,000.00
To Minnie C. Squier
 5,000 shares N.J. Zinc Co. ........................... 370,000.00
 _____________
 Total value of 1930 transfers ..................... $2,566,553.40
 TRANSFERS OF 1934
Trust Deed —
 To Minnie C. Squier, Frederick C. Squier, Jr.,
 Marjorie S. Searles, and others ................... $2,746,600.78

The transfers in 1930 were consummate gifts which were deemed by the Commissioner to have been made by the decedent in contemplation of death.
The transfers in 1934 entered into the composition of a trust from which the decedent's wife was to receive the income during her life. Her life estate in this trust was valued by the Commissioner, as of December 17th, 1934, at $366,989.90, and taxed solely as a gift in contemplation of death. The trust agreement ordained that upon the death of the decedent's wife, the principal should be bisected: the income from one-half to be applied jointly to the use of the decedent's daughter, Marjorie S. Searles, and her husband, Harold M. Searles, and to the survivor of them and then to their daughter Catherine, the principal on her death to pass to her issue or if there be no issue, to her maternal next of kin. The income from the other half is to be divided equally between the decedent's son, Frederick, and his wife and to the survivor of them, and then to their issue for life, within the limits of the rule against perpetuity, the corpus ultimately vesting in their grandchildren or issue. After deducting the precedent life estate, the Commissioner valued the remainder of the trust at $2,379,610.88, and levied transfer taxes on the several interests therein, persuaded by the circumstances that these benefactions were dispensed by the donor not only in contemplation of death, but also with the intent that they should become effective in beneficial possession and enjoyment at or after the donor's death. *Page 266 
Concisely stated, the last will of the decedent executed on February 7th, 1935, directs that the residue, comprising the major part of his own estate, shall be divided to allow one-half to be retained in trust for his wife during her life, conferring upon her a general power to appoint by will the beneficiaries of the remainder; the other one-half is to be divided in equal parts, one of which passes absolutely to his two children in equal shares, and the remaining part is to be held in trust for them during their lives, with an ultimate distribution of thecorpus to their issue in the proportions they shall designate by will.
In undertaking to determine the legal and logical propriety of the assessments here impugned by the appellants, it is essential to recall the precepts and principles by which such an inquiry should be governed.
In June, 1930, at which time the first gift was consummated, section 1, subsection "Third" of the Transfer Inheritance Tax Act (chapter 144, Laws of 1929) provided that a tax should be imposed: "Third. When the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."
The statute in the present Revision ordains (54:34-1, c) that a transfer inheritance tax shall be levied:
"c. Where real or tangible personal property within this state of a resident of this state or intangible personal property wherever situate of a resident of this state or real or tangible personal property within this state of a nonresident, is transferred by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death.
"A transfer by deed, grant, bargain, sale or gift made without adequate valuable consideration and within two years prior to the death of the grantor, vendor or donor of a material part of his estate or in the nature of a final disposition or distribution thereof, shall, in the absence of proof to the contrary, be deemed to have been made in contemplation of death within the meaning of paragraph `c' of this section."
The legislative lineage apparently begins fifty years ago with the following pursuance: P.L. 1892 ch. CXXII p. 206; *Page 267 P.L. 1893 ch. CCX p. 367; P.L. 1894 ch. CCX p. 318; P.L. 1898ch. 62 p. 106; P.L. 1902 ch. 217 p. 670; P.L. 1903 ch. 90 p. 128;P.L. 1906 ch. 227 p. 432; P.L. 1908 ch. 131 p. 200; P.L. 1909ch. 31 p. 49; P.L. 1909 ch. 209 p. 304; P.L. 1909 ch. 159 p. 236;P.L. 1909 ch. 228 p. 325; P.L. 1910 ch. 28 p. 42; P.L. 1912ch. 226 p. 367; P.L. 1914 ch. 57 p. 91; P.L. 1914 ch. 58 p. 97; P.L.1914 ch. 59 p. 98; P.L. 1914 ch. 151 p. 267; P.L. 1915 ch. 331 p.604; P.L. 1915 ch. 392 p. 745; P.L. 1917 ch. 237 p. 800; P.L.1917 ch. 278 p. 984; P.L. 1920 ch. 255 p. 473; P.L. 1920 ch. 345p. 610; P.L. 1922 ch. 173 p. 292; P.L. 1925 ch. 102 p. 313; P.L.1926 ch. 294 p. 488; P.L. 1927 ch. 228 p. 428; P.L. 1927chs. 247, 248 and 249 pp. 468-471; P.L. 1929 ch. 144 p. 250; P.L.1931 ch. 197 p. 496; P.L. 1931 ch. 303 p. 749; P.L. 1931 ch. 200p. 499; P.L. 1931 ch. 199 p. 498; P.L. 1931 ch. 198 p. 497; P.L.1932 ch. 140 p. 252; P.L. 1934 ch. 164 p. 406; P.L. 1934 ch. 243p. 691; P.L. 1934 ch. 244 p. 698; P.L. 1935 ch. 90 p. 264; P.L.1935 ch. 267 p. 849; P.L. 1937 ch. 128 p. 293; P.L. 1937 ch. 188p. 832; P.L. 1938 ch. 278 p. 605; P.L. 1939 ch. 303 p. 732; P.L.1940 ch. 220 p. 889; P.L. 1941 ch. 422 p. 1075.
The original enactment was fashioned to impose a property tax upon testamentary and intestate estates and upon inter vivos
transfers "made or intended to take effect in possession or enjoyment after the death" of the transferor. The amendment of 1906 transformed the tax into an excise tax to be levied against designated transfers of property and enlarged the field of taxation by encircling gifts "made in contemplation of death." The subject-matter of the several other enactments amendatory or supplemental does not require discussion here. Cf. Renwick v.Martin, 126 N.J. Eq. 564; 10 Atl. Rep. 2d 293; Schweinler
v. Martin, 117 N.J. Eq. 67; 175 Atl. Rep. 71, certiorari
dismissed, 13 N.J. Mis. R. 722; 180 Atl. Rep. 774.
The statute has been paraphrased to read as follows:
"(Tax is imposed, etc.), — Where the transfer is made intervivos as a substitute for testamentary transfer, i.e., where *Page 268 
it is intended to take effect in possession or enjoyment at or after the death of the transferor or is otherwise made as the result of a purpose, (either alone or together with other purposes), that the transferee shall or may have and enjoy, after the death of the transferor, the property transferred or some interest therein, and the transfer would not have been made in the absence of such purpose aforesaid." Cairns v. Martin,130 N.J. Eq. 313 (at pp. 326, 327); 22 Atl. Rep. 2d 415.
In the more expansive sense, the statutory phrases are incapable of precise literal exposition. The facts of each case must be examined in the process of inclusion and exclusion.MacGregor v. Martin, 126 N.J. Law 492; 20 Atl. Rep. 2d427. The manifest object of the statute is to tax testamentary and intestate transfers and also inter vivos transfers which are in fact makeshifts employed to effectuate a purpose normally accomplished by will. Renwick v. Martin, supra; Nicholas v.Martin, 128 N.J. Eq. 344; 15 Atl. Rep. 2d 235; Perry v.Martin, 125 N.J. Law 46, 48; 14 Atl. Rep. 2d 266;Schweinler v. Martin, supra; Cairns v. Martin, supra. The statute envelopes all transfers which in reality are substitutes for testamentary dispositions. Schweinler v. Martin, supra
(at pp. 73, 74, 79); In re Perry, 111 N.J. Eq. 176 (at pp.181, 182); 162 Atl. Rep. 146; In re Brockett, 111 N.J. Eq. 183
(at p. 187); 162 Atl. Rep. 150; In re Bottomley, 92 N.J. Eq. 202
(at pp. 207, 208); 111 Atl. Rep. 605; Nicholas v.Martin, supra; Cairns v. Martin, supra; In re Atkins' Estate,129 N.J. Eq. 186; 18 Atl. Rep. 2d 45; Perry v. Martin,supra; Scheider v. Martin, 127 N.J. Eq. 323; 13 Atl. Rep.
2d 223; affirmed, 124 N.J. Law 567; 12 Atl. Rep. 2d678. See, also, United States v. Wells, 283 U.S. 102 (atp. 116, 117); 51 S.Ct. 446; 75 L.Ed. 867; Nichols v.Coolidge, 274 U.S. 531 (at p. 542); 47 S.Ct. 710;71 L.Ed. 1184; Milliken v. United States, 283 U.S. 15; 51 S.Ct. 324;75 L.Ed. 809.
The substance rather than the form of the transfer controls.In re Hollander, 123 N.J. Eq. 52 (at pp. 54, 55);195 Atl. Rep. 805; In re Schlegel, 111 N.J. Eq. 324 (at p. 326);162 Atl. Rep. 651; In re Gemmell's Estate, 123 N.J. Eq. *Page 269 315; 197 Atl. Rep. 428; In re Hall, 94 N.J. Eq. 398 (at p.404); 119 Atl. Rep. 669; modified in 99 N.J. Law 1;125 Atl. Rep. 246; affirmed, 100 N.J. Law 405; 126 Atl. Rep. 924; Inre Honeyman, 98 N.J. Eq. 638 (at p. 639); 129 Atl. Rep. 393;affirmed, 4 N.J. Mis. R. 99; 131 Atl. Rep. 928; affirmed,103 N.J. Law 173; 134 Atl. Rep. 915; Hartford v. Martin, 122 N.J. Eq. 489; 194 Atl. Rep. 800; affirmed, 120 N.J. Law 564;1 Atl. Rep. 2d 13; further affirmed, 122 N.J. Law 283;4 Atl. Rep. 2d 31; 121 A.L.R. 354; Koch v. McCutcheon,111 N.J. Law 154; 167 Atl. Rep. 752; reversing 111 N.J. Eq. 324;162 Atl. Rep. 651.
It must also be confessed that a complete and immediately effective gift inter vivos is not taxable by the statute unless the gift was made in contemplation of death. In re Hollander'sEstate, supra; In re Brockett's Estate, supra; In re Honeyman,supra; Kellogg v. Martin, 130 N.J. Eq. 338; 22 Atl. Rep.
2d 430; or where the donor retains or gets back for his life the income or enjoyment or the equivalent. Cf. In re Perry,111 N.J. Eq. 176; 162 Atl. Rep. 146; In re Brockett, supra.
In construing the statute, regard must be accorded not only to the nature of the tax but also the apparent reason for its imposition. In re Diehl, 88 N.J. Eq. 310; 102 Atl. Rep. 738;affirmed, 89 N.J. Eq. 209; 103 Atl. Rep. 822. Evasions designed to thwart the intent of the statute should, of course, be circumvented. Plainfield Trust Co. v. McCutcheon, 8 N.J. Mis.R. 593; 151 Atl. Rep. 279; affirmed, 108 N.J. Law 201;154 Atl. Rep. 629; Koch v. McCutcheon, supra. The range of the statute should not be so restricted as to frustrate its evident purpose.MacGregor v. Martin, supra.
The construction will be determined by our own courts.Kunhardt v. Bugbee, 3 N.J. Mis. R. 1107, 1110;130 Atl. Rep. 660. The constructions placed upon similar phrases in federal statutes by the federal courts are not controlling. Nicholas v.Martin, supra; Hartford v. Martin, supra.
The following procession of cases is illustrative of transfers made in contemplation of death: Hartford v. Martin, supra; Inre Kellogg's Estate, 123 N.J. Eq. 322; 197 Atl. Rep. *Page 270 263; In re Fischesser's Estate, 14 N.J. Mis. R. 815;187 Atl. Rep. 648; Hasbrouck v. Martin, 120 N.J. Eq. 96;183 Atl. Rep. 735; Schweinler v. Martin, supra; In re Grabfelder's Estate,8 N.J. Mis. R. 53; 148 Atl. Rep. 922; affirmed, 107 N.J. Law 520;153 Atl. Rep. 532; In re Gould's Estate, 105 N.J. Eq. 598;148 Atl. Rep. 731; affirmed, 8 N.J. Mis. R. 798; 151 Atl. Rep. 743;affirmed, 108 N.J. Law 197; 154 Atl. Rep. 632; In re Kraft'sEstate, 103 N.J. Eq. 543; 143 Atl. Rep. 764; In re Dupignac'sEstate, 96 N.J. Eq. 284; 125 Atl. Rep. 119; In re Hall, supra; Inre Bottomley's Estate, supra; In re Atkins' Estate, supra;Scheider v. Martin, supra; In the following cases it was held that the transfer was not made in contemplation of death: Moore
v. Martin, 125 N.J. Law 189; 14 Atl. Rep. 2d 482; In reWimpfheimer's Estate, 126 N.J. Law 502; 20 Atl. Rep. 2d433; reversing 127 N.J. Eq. 587; 14 Atl. Rep. 2d 59;MacGregor v. Martin, supra; Kellogg v. Martin, supra; In reSacks, 101 N.J. Eq. 709; 139 Atl. Rep. 53.
A column of cases may be cited which exemplifies transfers taking effect at or after the transferor's death. Kings CountyTrust Co. v. Martin, 121 N.J. Law 290; 2 Atl. Rep. 2d187; In re Hollander's Estate, supra; In re Hartford's Estate,supra; Plainfield Trust Co. v. McCutcheon, supra; In re Deutz'sEstate, 105 N.J. Eq. 671; 149 Atl. Rep. 257; In re Russell'sEstate, 104 N.J. Eq. 578; 146 Atl. Rep. 361; Farmer's Loan andTrust Co. v. Bugbee, 6 N.J. Mis. R. 415; 141 Atl. Rep. 579; Inre Harvey's Estate, 2 N.J. Mis. R. 247; 129 Atl. Rep. 393; Moore
v. Bugbee, 3 N.J. Mis. R. 435; 128 Atl. Rep. 679; affirmed,102 N.J. Law 720; 135 Atl. Rep. 919; error dismissed, 278 U.S. 565;49 S.Ct. 36; 73 L.Ed. 509; American Board of Commissioners forForeign Missions v. Bugbee, 98 N.J. Law 84; 118 Atl. Rep. 700;Renwick v. Martin, supra; Hasbrouck v. Martin, supra; Koch
v. McCutcheon, supra; In re Brockett's Estate, supra; In rePerry's Estate, supra; In re Fosdick's Estate, 102 N.J. Eq. 45;139 Atl. Rep. 318; Pierce v. Bugbee, 101 N.J. Law 411;128 Atl. Rep. 253; Carter v. Bugbee, 92 N.J. Law 390;106 Atl. Rep. 412. Holdings contrary *Page 271 
include In re Kellogg's Estate, supra; Wolff v. Comptroller,90 N.J. Eq. 221; 105 Atl. Rep. 871.
The determinant of the taxability of an inter vivos transfer as in contemplation of death is the intent and purpose of the transferor. That was the holding of Schweinler v. Martin,supra, and it has been consistently followed. It was also established in that opinion that contemplation of death must be the controlling cause of the transfer (p. 101) although it need not be the sole cause (p. 90). Sometimes decisions speak of the "impelling cause." MacGregor v. Martin, supra. In any event contemplation of death must be a sine qua non to the giving. An elucidative interpretation of the statutory phrase "in contemplation of death" was recently expressed by the late Vice-Chancellor Buchanan in Cairns v. Martin, supra. A reproduction here of his remarks would be redundant; an attempt to remodel them would be presumptuous.
Whether or not a transfer comes into enjoyment or possession at transferor's death is a matter of a realistic examination of the shifting of economic burdens and benefits, the actual succession to property. Hartford v. Martin, supra (at pp. 286, 287), of the Court of Errors and Appeals decision.
The legislature has expressly conferred upon the Ordinary the jurisdiction "to hear and determine all questions in relation to a tax levied" under the statute. R.S. 54:33-2. A right to appeal to the Ordinary is afforded to any interested person dissatisfied with an assessment levied by the Tax Commissioner.R.S. 54:34-13. The power so broadly conferred embraces, and undoubtedly contemplates the exercise of, the right to investigate judicially the legal and basic factual propriety of the tax assessment. Kellogg v. Martin, supra; (In rePierce's Estate, 89 N.J. Eq. 171 (at p. 172);104 Atl. Rep. 298, overruled on this subject).
In MacGregor v. Martin, supra, the Chief-Justice observed (at p. 501): "In matters of taxation the state must be protected and tax evasions should not be tolerated. But there is a duty to the individual that is equally solemn."
The difficulty normally encountered by the taxing authority in adequately establishing by competent and credible evidence *Page 272 
the taxability of inter vivos gifts is easily perceived. Nevertheless, this difficulty, so frequently emphasized, cannot logically be taken to inflate the credibility or intensify the weight of the evidence actually adduced in favor of taxability. Enlightened witnesses capable of supplying the pertinent evidence are customarily parties in interest. This exigency probably induced the legislature (1922) to fabricate the pragmatical presumption of a testamentary motive in those cases where gifts are made within two years of death. This presumption, where applicable, serves to place upon the representative of the estate the duty to come forward with contradictory evidence, but at the extremity of the proceeding, the burden reposes upon the taxing authority to establish by the fair preponderance of the specific and inferential facts that the transfer was made as a substitute for testamentary disposition. Cairns v. Martin, supra (at p.328).
It has been noticed that the transfers to be considered in the present appeal were not made within the prescribed period. Therefore, no artificial statutory presumption arises that they were made in contemplation of death. However, a transfer is not necessarily to be regarded as free from the tax merely because it was accomplished beyond the specified period. The legality of the tax levy in either circumstance must be determined in view of the peculiar facts of the given case. In re Sacks, supra;Schweinler v. Martin, supra.
It is also injudicious to assume initially that every relatively large gift made by a donor of advanced age is made in contemplation of death and then survey the evidence solely from that point of view. The age and state of health of the donor, the segment of the donor's estate transferred and the constitution of the gift are factors to be considered together with all other relevant circumstances. It has been written that "a gift, its kind, its value, its appearance; the silence or pomp that attends it; the style in which it reaches you, may decide the dignity or vulgarity of the giver."
A diffuse recitation of all of the evidence would call for an extravagant expenditure of words. It will not be undertaken. A concise statement of the influential and persuasive facts will suffice. *Page 273 
The decedent was born on October 1st, 1856. He became associated with his father and brothers in the business of the Passaic Zinc Company. In 1897 this company merged with the New Jersey Zinc Company. As a result of the merger and the subsequent declaration of stock dividends, the decedent acquired a large volume of the capital stock of the latter company. The enterprise was exceedingly profitable and the decedent, retiring from active occupation at the early age of forty-one, soon acquired considerable wealth. His wife, Minnie, was also born in 1856. Of the marriage, a daughter Marjorie was born in 1886 and a son, Frederick, in 1896. The daughter married Mr. Searles whose income was too slender to maintain the neighboring abode which the decedent obtained for their occupancy. His personal income continued to be too meager. The son never has pursued any remunerative occupation.
The decedent's wife quite constantly expressed a desire to have funds which she might disburse in accordance with her own wishes. She was regularly obliged to procure from her husband some pecuniary assistance for her dependent sisters. Moreover, she manifested a personal interest in certain religious, educational, civic and social organizations of the community, and she constantly aspired to possess personally funds from which she could make donations for their support without importuning her husband. Such requests, accompanied by a persuasive explanation, were usually granted by the decedent, but the modus operandi
evidently irked the decedent's wife. To satiate the needs of his son and daughter, the decedent during the years customarily gave them monetary donations on their birthdays, wedding anniversaries and at Christmas, enlarging the gifts as their requirements obviously increased. All of these practices endured until the transfer of 1930.
On January 19th, 1926, the decedent's brother, Edwin, died, leaving an estate of approximately $7,000,000. The decedent with whose transfers we are now concerned thereupon became entitled to about $2,750,000, representing one-half of the residuary estate bequeathed by Edwin. The decedent himself had already accumulated a fortune of $4,000,000 *Page 274 
to which there was now to be added $2,750,000. This conspicuous event seems to pervade every exertion to reach a logical and reasonable understanding of the decedent's gifts in 1930.
Learning of the provisions of his brother's will, the decedent then substantially increased the amount of his occasional pecuniary gifts to his son and daughter. It was then that he was heard to express a purpose to gratify his wife's desire for an account of her own and also to provide a competence for his son and daughter. Litigation relating to the probate of his brother's will (In re Squier, 106 N.J. Eq. 267; 150 Atl. Rep. 430) postponed the distribution of the estate until the year 1930. Significantly, it was not until he had received his inheritance that the decedent effectuated the contemplated transfers to his wife, son and daughter. Upon consummating the transfers of 1930, the decedent abruptly ceased making the occasional gifts to his children.
It is essential to explore inquisitively the probable meditations of the decedent after knowledge of the benefactions he would receive from the estate of his brother. His own requirements were relatively modest rather than extravagant. His resources and income were already more than adequate. His daughter had now attained the age of forty; his son was then thirty. Both had married and had children also to maintain. All were obliged to fashion their standard of living in the expectation of the periodical donations of the decedent. An expedient opportunity was now available to bestow an immediate financial emancipation upon his wife, son and daughter, without in anywise diminishing his own assets. Presumably, the rational apprehension of augmented income taxes and the ascending responsibilities of supervising the prudent investment of added capital, were also factors which were not entirely ignored. Amid such circumstances, however, the decedent undoubtedly realized that he was now the recipient of a substantial bequest, a goodly portion of which he could discreetly transmit immediately to his wife, son and daughter, and thereby magnanimously liberate himself from the incessant obligation of contributing to their financial requirements. His son and daughter would then be presently secure in their *Page 275 
financial contingencies. His regard for their present comfort and welfare was, of course, a potential consideration. Recognizing all of the surrounding circumstances, it seems evident that the bequest in the brother's will generated in the mind of this decedent the thought and purpose of making the transfers actually effectuated in 1930.
The notion that a contemplation of death constituted a propulsive motive for these initial transfers is unwarranted by the evident facts. It is frankly acknowledged by the respondent that the decedent continued to be in sound health until the seventy-ninth year of his life. He was sixty-nine years of age at the death of his brother Edwin. He could recollect that his father died at the age of ninety-four. His mother lived a span of ninety-one years. All but one of his brothers survived to an advanced age. The testimony is replete with narratives concerning his remarkable vivacity, energy and vigor. It is not apparent that in 1926 when the transfers were first conceived, or in 1930 when they were consummated, the idea of death was exerting a dominant controlling or impelling influence upon his intentions and purposes.
The transfers of 1930 were absolute and consummate gifts. Their substance came from the estate of the decedent's brother. Otherwise, they probably would not have been made. The decedent did not in its significant sense divest himself of a large part of his own estate. The gifts were intended to be possessed and enjoyed immediately by the donees during the life of the donor in the place of his periodical contributions. These gifts do not possess a testamentary character or manifest the characteristics of the testamentary plan adopted by the decedent in his subsequent transfers. It is, of course, possible that these original gifts were mere substitutes for testamentary dispositions but the evidence does not warrant that conclusion. In the consideration of inter vivos gifts made beyond the two-year period, pertinent and persuasive proof must exist to justify the conclusion that the transfers were taxable.MacGregor v. Martin, supra (at p. 501). Therefore the gifts of 1930 should not have been taxed as transfers made by the decedent in contemplation of death. *Page 276 
Advancing, now, to the consideration of the transfers (trust deed) of 1934, it becomes at once intelligible that the factual causes of his former benevolence no longer existed. The purpose to make provision for the immediate financial security of his wife, son and daughter had been fulfilled. In 1934 there was no prevailing reason for the creation of additional ante mortem
interests for their immediate use. All were now possessed of a substantial income-producing competence. The decedent had continued to retain that which may be described as his own estate. He had now arrived at the age of seventy-eight years. Nine years had elapsed since he had resolved to divert to his wife and children the legacy bequeathed to him by his deceased brother. During the past four years he had been privileged to witness their supervision and enjoyment of the gift.
The decedent remained in relatively robust health and yet — since 1933 he had been experiencing recurrent attacks of dizziness. Although these attacks were of a transient nature, they nevertheless caused him some concern. He consulted his physician. The attacks persisted.
What were the thoughts that probably invaded the decedent's mind in the knowledge of all the existing circumstances? It is said that he apprehended an early increase in gift and income taxes. If so, did inheritance taxes entirely elude his attention? He was again in a disposing mind. He "proceeds to devise and decide upon a plan." He then "made a choice between testamentary gift and present gift in favor of the latter." Schweinler v.Martin, supra (at pp. 96 et seq.). Within a period of two months (December 17th, 1934-February 7th, 1935) he caused the trust agreement and his last will to be prepared. True, these instruments were executed by him about two and one-half years before his death but, mark you, those were the seventy-ninth and eightieth years of his life. Gifts taxable as having been "made in contemplation of death" are, however, not limited to transfers made in, and because of, the transferor's contemplation and belief that his death is imminent, or that it is apt to occur in the not distant future. Schweinler v. Martin, supra; Nicholas
v. Martin, supra. The decedent had now undertaken to divest himself of his own estate. *Page 277 
Certain concrete facts predominate in displaying the intent and purpose of the decedent in executing the inter vivos transfer of 1934. There was at that time no potent cause for the creation of ante mortem interests or estates and thus no reciprocal motive to do so. The inducement is a relevant and material fact. The decedent resolved to give away one-half of his $4,000,000 estate. To do so, he utilized a trust agreement having the features and characteristics of a typical testamentary disposition. Significantly, his wife, then also seventy-eight years of age, concurrently executed a similar trust agreement.In re Perry's Estate, supra. Both are parts of one transaction which was presumably engineered by the decedent. The trust agreement of the decedent follows in general the same purposes which he manifests in all of his three wills. Indeed, the so-called postponement under the trust exceeds that under the will, for the former postpones final disposition for lives in being and twenty-one years. The thing which the statute taxes is not the particular instrument but the transfers actually made. The gifts are plainly an intended execution pro tanto of the testamentary scheme noticeable in the wills. The chief purpose of the decedent was to provide for the future. The proof fails to reveal any plausible cause in this latter transfer for the creation of ante mortem rather than post mortem interests. It is unnecessary to elaborate. The decedent must be held to have intended to accomplish by means of the trust agreement the transfer of this material portion of his estate to the person and persons who should have the enjoyment of it after his death in conformity with his wishes.
A transfer is, of course, taxable if made in and because of such contemplation of death as that which leads to testamentary disposition and if made with the purpose that it be in lieu of testamentary disposition.
These transfers evidenced by the trust agreement of 1934 were in fact dispositions made by the decedent because he had finished, either wholly or partially with his desire for the enjoyment of the subject-matter and were inter vivos transfers which were intended by the decedent to take the place of transfers by will and probably with the idea that if thus *Page 278 
executed, they would escape the tax. The accompanying and surrounding facts and circumstances project the conviction that these transfers of 1934 were made in contemplation of death within the established intent and meaning of the statute.
In view of this conclusion it is unnecessary to examine the Commissioner's further averment that the trust gifts to the trustor's descendants were intended to take effect in possession and enjoyment at or after the trustor's death.
It is therefore determined (a) that the inter vivos transfers of 1930 were actual, direct, complete and immediate, with no intended postponement of enjoyment and that the assessments against these transfers as made in contemplation of death are erroneous and they will be vacated; (b) that the imposition of the taxes upon the transfers made by the trust agreement of 1934 as transfers made in contemplation of death was justified by the evidence and these assessments are affirmed.
 A decree will be advised in accordance with these conclusions. *Page 279